Schjsppi, J.
This accounting proceeding was commenced for the settlement of the accounts of the trustees under the will of the testatrix, Dorothy Silberman. The accounts which accompanied the petition revealed that the trustees had construed articles Twenty-Sixth and Twenty-Seventh of the will as being intended to benefit only the natural grandchildren of the testatrix.
Following our decision in Matter of Park (15 N Y 2d 413) petitioners-respondents filed a supplemental petition raising for the first time the question of construction with respect to the rights of the adopted children to participate in the payment or distribution of the principal or income of the trusts under articles Twenty-Sixth and Twenty-Seventh of the will.
The testatrix executed her will on February 7, 1950. She died on February 18,1951 survived by two sons and three natural grandchildren. Another child was born to testatrix’ son Samuel in 1955. Samuel and all four natural grandchildren are living. The testatrix’ son Marvin died in 1959.
At his mother’s death, Samuel was married to Leslie R. Silberman. Leslie had two children, Douglas and Rita Frates, by a prior marriage (hereinafter referred to as the Frates children). In 1956 by order of the Surrogate’s Court, Westchester County, Samuel adopted the Frates children. Samuel’s mar *103 riage to Leslie was terminated by divorce in 1960 and shortly thereafter Samuel married Lois Herskovitz. Lois also had two children, Allen and Jane Herskovitz, by a prior marriage" (hereinafter referred to as the Herskovits children). In 1965 pursuant to orders of the Surrogate’s Court, New York County, Samuel adopted the Herskovits children.
The sole question presented on this appeal is what rights do the Frates and Herskovits children have to share in the principal and income issuing under the trusts created by the testatrix in articles Twenty-Sixth and Twenty-Seventh of her will.
The Appellate Division, First Department, unanimously affirmed the decree of the Surrogate’s Court, New York County (Cox, S.), construing articles Twenty-Sixth and Twenty-Seventh of the will, providing that only the natural born children of decedent’s sons qualify and are entitled to share as beneficiaries and declaring that appellants, being adopted children of decedent’s son, Samuel J. Silberman, have no right or interest in the trusts under the above-mentioned articles of decedent’s will.
Article Twenty-Sixth provides: “ I give, devise and bequeath one-fourth (%) of my said residuary estate to my Executors and Trustees hereinafter named, in trust, nevertheless, to invest, reinvest and keep the same invested for and during the life of my beloved son, Samuel J. Silberman, to collect and receive the income and profits arising therefrom, and to pay over the same, in quarterly or more frequent installments, to my said beloved son, Samuel J. Silberman. Upon his death, or if he shall predecease me then upon my death, I direct my said Executors and Trustees to divide the principal or corpus of said trust into as many equal parts as there shall be children of my said son then living and issue of any deceased child of my said son, one such share or part for each such child and one in turn divided into equal parts for the issue collectively of any such deceased child. As to any such child or issue born after my death, his or her share or part shall then and thereupon be paid and distributed to him or her outright; but as to any such child or issue who shall have been living at my death, I direct my said Executors and Trustees to hold, invest and reinvest the same each upon a separate trust, measured in each instance by the life of the respective child or issue of a deceased child of my said son for whom the same shall have been set apart *104 as aforesaid, and to hold, invest and reinvest the same, and to collect and receive the income and profits arising therefrom, and after paying the expenses of each snch trust to pay and turn over the income to him, in quarterly or more frequent installments, for life, and upon his death to pay and turn over the principal or corpus to his then living lawful issue, and in default thereof then to the then living lawful issue of my said son, Samuel J. Silberman, and in default thereof to my then living lawful issue, in each instance in equal shares, per stirpes and not per capita. ’ ’
At the date of the will and at the time of the testatrix’ death section 115 of the Domestic Relations Law provided that an adopted child would inherit from his foster parent hut would not inherit through a foster parent from the kin of such foster parent.
In interpreting section 115, we held in Matter of Parh (supra) that ‘ ‘ A testator or settlor must know that in light of New York policy a foster child has exactly the same ' legal relation ’ to the parent as a natural child. In the absence of an explicit purpose stated in the will or a trust instrument to exclude such a child, he must be deemed included, whether the word ‘ heir ’, ‘ child ’, ‘ issue ’ or other generic term expressing the parent-child relationship is used ” (p. 417; emphasis added).
Surrogate Cox, after referring to our holding in the Parh case, concluded that, ‘ ‘ If the problem of construction concerned article Twenty-sixth only and that article of the will contained the sole expression of the testatrix’ general testamentary purpose, the conclusion would need be that, by force of the public policy referred to in Parh and the absence of a clear expression of a purpose to reject that policy, the adopted children are participants in the trust.”
It should be noted at this point that at the time the testatrix made her will the Frates children were known to her and she in fact made provision for them in a separate article Twenty-Third by the creation of a relatively minor trust bequest of $25,000.[1] The Surrogate, however, properly dealt with the applicability of this bequest when he stated: “ The fact that the testatrix made a relatively minor trust bequest for the bene *105 fit of the then stepchildren of her son cannot be regarded as an ' express purpose ' to exclude those later adopted children from any further benefit under the will. At the date of the will these children had not been adopted and, lacking some testamentary provision naming them, they could have no claim upon the estate. This remembrance of persons who then were not related to either the testatrix or her son cannot be read as expressive of her attitude toward a fact situation which came into existence some years after her death.”
The Surrogate, however, found that the language and intention manifested in article Twenty-Seventh was enough to satisfy the test enunciated in Park to exclude adopted children. He not only excluded the adopted children from article Twenty-Seventh but felt that the language and intention evidenced in article Twenty-Seventh pervaded the entire instrument and, therefore, also excluded the adopted children from receiving any benefit under article Twenty-Sixth.
The pertinent provisions in article Twenty-Seventh provide:
“ I give, devise, and bequeath the remaining one-half (%) of my said residuary estate to my Executors and Trustees hereinafter named, in trust, nevertheless, to invest, reinvest and keep the same invested during a trust term measured in any and every event by the lives of my sons, Marvin J. Silberman and Samuel J. Silberman, but subject to earlier termination as hereinafter provided, to. collect and receive the income and profits arising therefrom, and to distribute, pay and turn over the income and principal of such trust as follows, to wit:
“A. To divide the income from time to time into equal shares, per capita, and not per stirpes, according to the number of the lawful children of my said sons living at my death or born thereafter and who shall continue to live during the trust term, and to accumulate such income for the benefit of my said grandchildren, until they shall respectively attain the age of twenty-one (21) years, and thereupon to pay and turn over the same to them. In case of the death of any such lawful children of my said sons living at my death or born thereafter, leaving issue surviving, such issue shall take, in equal shares, the share of the income which the parent would have taken if living, same however to be accumulated in the same manner as hereinbefore pro *106 vided for my grandchildren and to be paid over when such issue attain the age of twenty-one (21) years.
“ B. When any of my lawful grandchildren shall survive to and attain the age of twenty-one (21) years, the class of beneficiaries hereunder shall close, and thereupon my Executors and Trustees shall divide the principal of this trust into as many equal shares or parts as shall be the number of my grandchildren then living plus one such share or part for the issue collectively of any grandchildren who shall have died, and they shall segregate and pay over each of such shares or parts into a separate trust, one for the benefit of each such grandchild of mine, and one in turn divided into equal parts for the lawful issue then living of each deceased grandchild, to be held and disposed of as hereinafter provided in the following subdivision (C) hereof ” (emphasis added).
The basis of the Surrogate’s finding an explicit purpose to exclude adopted children from the benefits of both provisions is twofold. First is the use in article Twenty-Seventh of the term “ grandchildren ” and, second, the provision in subdivision B of article Twenty-Seventh for the closing of the class of beneficiaries of the trust under that article.
The Surrogate singled out the use of the term “ grandchildren ” as manifesting an intention to exclude adopted children. He reasoned that because at this time the Domestic Relations Law only provided for an adopted child to inherit from and not through his foster parents, that the adopted children were not lawfully grandchildren of the testatrix and, therefore, only the natural born children fall within the term “ grandchildren ”. However, in the very same article Twenty-Seventh the term “ lawful children of my said sons ” is employed to identify the very same persons. Certainly, this term would include the adopted children. How then can we say that the legal connotations of one term were intended and not that of another so as to overcome the presumption created by Park?
Even if we assume arguendo that only the term “ grandchildren ” was employed, the conclusion is still inescapable, based on our decision in Park, that the adopted children should benefit under the trusts. In Park (supra, p. 417) we stated that the presumption exists “whether the word ‘heir’, ‘child’, ‘ issue ’ or other generic term expressing the parent-child reía *107 tionship is used As a rule of construction, the doctrine of ejustem generis would require us to construe the general phrase “ or other generic term”, as applying only to persons of the same class as those specifically mentioned. The term ‘' grandchildren ” means the children of my children. Certainly, it evidences a parent-child relationship. It is clear from Park that the parent-child relationship contemplated need not be between the testator and beneficiary. Even if terms such as nieces and nephews were employed, it would evidence a parent-child relationship, to wit, my brothers and sisters and their children and, therefore, would carry with it the Park presumption.
Finally, even if we concluded that the Surrogate was correct in his interpretation of the term “ grandchildren ”, it does not necessarily follow that the adopted children would not take under either article. Indeed, if anything, the absence of the term grandchildren from article Twenty-Sixth would evidence an intention by the testatrix to include adopted children under article Twenty-Sixth.
The other factor relied upon by the Surrogate in reaching his decision is the provision found in subdivision B of article Twenty-Seventh concerning the closing of the class of beneficiaries. The Surrogate stated that the testatrix had a definite plan for the duration of the trust and that she did not intend it to be nullified by the act of a son in adopting a child. The argument is advanced that, if adopted children were entitled to share in the trust under article Twenty-Seventh, the will of the testatrix could be rewritten simply through the adoption by a son of a child older than any living grandchild. It is suggested that by this method a son could have adopted a child 20 years of age, with the result that the class would close upon the adopted child’s attaining the age of 21 years and thereby exclude any later natural born child from sharing in the trust.
The fallacy of this argument-is that it assumes that the possibility of an unusual happening, of the nature above mentioned, automatically converts the aforesaid provision of article Twenty-Seventh into an expression of an explicit purpose to exclude adopted children. It must be borne in mind that the rule of Park is that adopted children are included in the absence of an expression of a specific intent to exclude adopted children. *108 Certainly, the provision in subdivision B of article Twenty-Seventh for the closing of the class of beneficiaries does not meet that requirement; it does not mention adopted children and it is not by itself expressive of an intent to exclude adopted children. All that can be said for the provision for the closing of the class, and all that has been said by the Surrogate, is that if adopted children were permitted to share in the trust under article Twenty-Seventh, the possibility exists that an adoption might exclude natural born children.[2]
The formula for the closing of a class creates an arbitrary standard and 'inequities are always possible in such a case. However, the possibility of an inequity, especially one so remote as that suggested in the opinion of the Surrogate, resulting from the provision for the closing of a class of beneficiaries, should not cause such provision to be read as an expression of an explicit purpose to exclude adopted children from such class.
In arriving at his determination, Surrogate Cox concluded that all extrinsic evidence should be excluded and that, if the intention of the testatrix was to exclude adopted children from benefiting under articles Twenty-Sixth and Twenty-Seventh, then such intention must manifest itself within the four corners of the will.
The respondents contend, however, that at the very least the language in the instant will creates an ambiguity and, therefore, the Surrogate erred in refusing to admit the extrinsic evidence.
Generally, extrinsic evidence is admissible only where there is an ambiguity or the language is doubtful (Matter of Smith, 254 N. Y. 283, 289; Morris v. Sickly, 133 N. Y. 456, 459-460). In support of their postion that an ambiguity does exist, respondents set forth the following statement from Matter of Upjohn, (304 N. Y. 366): “ What the testator meant when he used the words ‘ issue ’ and ‘ descendant ’ is not to be decided in vacuo. It is impossible for a court to ascertain the meaning with which they were employed in a particular will without considering the context of the entire instrument and the background of facts and circumstances existing when the will was made ” (p. 375).
This, however, is not controlling. Our decision in Park did away with any ambiguity that might have existed in these *109 generic terms and in its place substituted a presumption in favor of the adopted child. This presumption, as stated in Park, can only be rebutted by “ an explicit purpose stated in the will
This is not to say, however, that if an ambiguity is created within the will by means other than the use of these generic terms, that Park would preclude the consideration of extrinsic evidence to determine the intention of the testator. Our decision in Matter of Ricks (18 N Y 2d 640) is illustrative of just such a case. In Ricks the pertinent provision of the will reads as follows:
JS, Jr. SHE W. McGr
“ (c) I give, devise and bequeath one of such equal shares as follows: per capita, to such of the children andr adepted-chü dsert-of Esheet G=brtb*®b-Becks -and of my late son, Jambs B. Eicks, deceased as shall be living at the date of my death. ’ ’
We affirmed the holding of the courts below that the adopted children of James were to be excluded, notwithstanding the fact that the Surrogate had considered extrinsic evidence in arriving at his determination. This evidence, however, was allowed not because of any ambiguity created by the use of terms similar to those used in Park and the case at bar, but rather to shed light on the ambiguity created by the striking out of verbiage on the face of the will.
In the instant case, there is no ambiguity within the four corners of the will and accordingly the Surrogate’s exclusion of the extrinsic evidence was proper.
Finally, it is necessary for us to consider a subsidiary question unanswered by the courts below.
Under the provisions of paragraph B of article Twenty-Seventh, the testatrix provided that “ When any of my lawful grandchildren shall survive to and attain the age of twenty-one (21) years, the class of beneficiaries hereunder shall close ”.
As noted earlier, the class in fact closed on January 8, 1964 when the oldest natural grandchild of the testatrix became 21. The Herskovits children were not adopted until November 17, 1965, some 22 months after the class closed. However, they were born at the time the class closed.
*110 The Surrogate having found that all of the adopted children were excluded from benefiting under either of the relevant articles, neither court below reached the question of whether the time of adoption or birth is crucial in determining whether the class had closed on the Herskovits children.
We have stated that the legal effect of an adoption is to make the adopted child a natural child of the foster parent from the time of adoption (Betz v. Horr, 276 N. Y. 83; Carpenter v. Buffalo Gen. Elec. Co., 213 N. Y. 101). Although the will provided that all those grandchildren living at the time the class closed were to be brought under article Twenty-Seventh, the Herskovits children were not ‘ ‘ grandchildren ’ ’ at the time the class closed. We earlier construed “ grandchildren ” as used in the will as children of my children. The Herskovits children did not become children of the testatrix’ son until their adoption which was subsequent to the closing of the class.
The mere happenstance that a child who is adopted after January 8, 1964 may have been born before that date cannot bring such child within the class of beneficiaries of the trust under article Twenty-Seventh. To hold otherwise would permit any number of children to be adopted by testatrix’ son Samuel at any time after the closing of the class as long as they were born before January 8, 1964. This would result' in the class remaining open until Samuel’s death, a result certainly not intended.
Therefore, the order of the Appellate Division should be modified, with costs payable out of the estate to all parties appearing separately and filing separate briefs, by reversing so much thereof as excluded the four adopted children under article Twenty-Sixth and two of the adopted children, the Frates children, under article Twenty-Seventh, and, as so modified, affirmed.
Chief Judge Fuld and Judges Burke, Bergan, Keating and Jasen concur; Judge Breitel taking no part.
Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.

. The amount to be ultimately realized under articles Twenty-Sixth and Twenty-Seventh is in excess of $3,000,000.

. As it happened, the class was closed in 1964 by a natural child’s attaining the age of 21.