**OMNI QUARTZ, LTD., Plaintiff–Appellant,**

**v.**

**CVS CORPORATION and Revco D.S., Inc., Defendants–Appellees.**

**Docket No. 01–7343.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 21, 2001.

Decided: April 16, 2002.

James Klatsky (Weinstock, Joseph, Klatsky & Schwartz, Belle Harbor, NY; on the brief), for Plaintiff–Appellant.

Miriam A. Widmann (Allyn & Fortuna, New York, NY, on the brief), for Defendants–Appellees.

Before KEARSE, CALABRESI, and KATZMANN, Circuit Judges.

KEARSE, Circuit Judge.

Plaintiff Omni Quartz, Ltd. ("Omni" or "Omni Quartz"), appeals from a final judgment of the United States District Court for the Eastern District of New York, Sterling Johnson, Jr., *Judge,* dismissing its complaint against defendants CVS Corporation ("CVS") and Revco D.S., Inc. ("Revco") (collectively "CVS/Revco"), for alleged breaches of an agreement for the promotion and sale of Omni products. The district court granted summary judgment in favor of defendants on the ground that the contract between Revco and Omni was unambiguous and did not include the additional obligations that Omni contended were unfulfilled, and that the undisputed facts revealed no breach of the terms agreed to by the parties. On appeal, Omni contends that the court erred in refusing to consider extrinsic evidence as to the scope of defendants' obligations and in finding no breach. For the reasons that follow, we affirm the judgment except to the extent that it dismissed Omni's claim that defendants failed to conduct two contractually required promotions of Omni products during the term of the contract; as to that claim, we vacate and remand for further proceedings.

## I. BACKGROUND

Most of the relevant facts are not genuinely in dispute. Omni, a manufacturer and importer of watches, began supplying watches to Revco in 1992 for sale in Revco's chain of retail drugstores. The watches were sold in accordance with organized manufacturing and marketing programs, rather than on the basis of individual purchase orders. The contract at issue here is a letter agreement between Omni and Revco dated March 17, 1997 ("Agree-

ment" or "Letter Agreement"), containing provisions for, *inter alia*, style change-overs, price reductions on discontinued styles, full or partial coverage by Omni of the cost of such reductions, the introduction of new styles, and the cost and retail prices of the new styles. (*See* Agreement at 1–2, ¶¶ I–III.) As to "new items," the Agreement called for an initial order by Revco of a total of "roughly 40,000" such items, plus "[w]arehouse backup ... of roughly another 12,000 pieces" (*id.* at 2, ¶ III.D.), and stated that "[t]he plan will be to run four (4) promotions per year" (*id.* ¶ III.B.).

The penultimate (unnumbered) paragraph of the Agreement provided that the sales program was to "remain in effect in all Revco stores for a period of not less than one (1) year, commencing March 3, 1997." (Agreement at 2.) The Agreement included no requirements as to notification by either party of an intention either to continue or not to continue the arrangement beyond March 2, 1998.

In May 1997, Revco was acquired by CVS. In CVS's own retail drugstores, CVS sold Timex watches, not Omni watches. In December 1997, CVS/Revco notified Omni that it would not continue the Omni program in Revco stores beyond March 1998. CVS/Revco thereafter sold Omni watches in Revco stores at reduced prices in an attempt to exhaust its inventory, selling such watches at least through the end of the one-year period covered by the Agreement. Omni remained a supplier of watches to stores operated by Revco "through July, 1998." (Defendants' Statement Pursuant to Local Rule 56.1, ¶ 2, undisputed by Omni.)

The complaint in the present action was filed by Omni in October 1998, alleging, *inter alia*, that beginning on or before December 15, 1997, CVS/Revco refused to honor its obligations under the Agreement and "knowingly and willfully breached the contractual terms and obligations of the Letter Agreement, including the implied covenant of good faith and fair dealing thereunder" (Complaint ¶ 14). Following a period of discovery, defendants moved for summary judgment, contending that the terms of the Agreement were unambiguous and did not require them to sell any specified quantity of Omni merchandise or to sell any Omni merchandise beyond the one-year period that ended on March 2, 1998.

Omni opposed defendants' summary judgment motion and cross-moved for summary judgment in its favor, contending principally that the intent of the parties had been to conduct an extended sales program and that CVS/Revco's December 1997 notice cancelled the Agreement and thereby constituted a breach. Omni argued that CVS/Revco also breached the Agreement by, *inter alia*, placing a "hold" on shipments of Omni products from Revco warehouses to Revco stores for a period following CVS's acquisition of Revco; limiting Revco sales of Omni merchandise after December 1997 to in-stock inventory and placing no new orders; and failing to run two of the four promotional sales events called for by the Agreement.

In a ruling announced from the bench on March 1, 2001, the district court granted CVS/Revco's motion for summary judgment and denied Omni's cross-motion. The court found that the Agreement "did not state that Revco accepts or incorporates any other agreements, nor did it make any guarantees or projections," and that the terms of the Agreement "were clear on its face." (Hearing Transcript, March 1, 2001 ("Tr."), at 3.) The court stated that Omni had provided no evidence to support its contention that CVS/Revco's December 1997 notice constituted a cancellation of the Agreement.

As to the claim that CVS/Revco had "breached the implied covenant of good faith and fair dealing" by placing the watch sales program on hold for several months and blocking Omni merchandise from being shipped from Revco's warehouses to its retail stores (Tr. 4), the court found that Omni had "produced no evidence whatsoever indicating that CVS and/or Revco acted in bad faith" (*id.* at 4–5). As to the contention that during the last few months of the contract period CVS/Revco made sales of Omni watches only from CVS/Revco's in-store inventory, the court found that such a course of conduct did not constitute a breach and that "CVS and/or Revco met [the clear] terms" of the Agreement (Tr. 3).

Judgment was entered in favor of defendants, and this appeal followed.

## II. DISCUSSION

On appeal, Omni contends that "the intent of the parties was that Revco/CVS would make good faith efforts to promote the Omni Quartz product in such manner as to maximize the profits to both parties" (Omni brief on appeal at 30), and it contends that "CVS utterly failed to do this" (*id.*), that "CVS had little or no intention of promoting the Omni Quartz program to its fullest" (*id.*), and that CVS/Revco "never made any *real* attempt to promote and carry out the Omni Quartz program" (*id.* at 18 (emphasis in original)). Omni argues principally that the district court erred (a) in refusing to consider extrinsic evidence in determining CVS/Revco's obligations, and (b) in finding that there was no breach of the Agreement. Except with respect to the claim that CVS/Revco failed to conduct the required number of new-product promotions during the term of the Agreement, we see no error in the district court's granting of summary judgment in favor of defendants.

### A. The Claimed Obligation of CVS/Revco To Maximize Omni's Profits

It is well established that a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract. *See, e.g., Seiden Associates, Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992); *67 Wall Street Co. v. Franklin National Bank,* 37 N.Y.2d 245, 248–49, 371 N.Y.S.2d 915, 918, 333 N.E.2d 184 (1975); *Restatement (Second) of Contracts* § 213 (1979). As to such a contract, a party "is precluded from introducing extrinsic evidence of the contract's purpose in order to vary the plain meaning of the writing," *Investors Insurance Co. of America v. Dorinco Reinsurance Co.,* 917 F.2d 100, 104 (2d Cir.1990), or in order "to increase [a party's] obligations" where those obligations were "explicitly outline[d]" in the contract itself, *Gerard v. Almouli,* 746 F.2d 936, 939 (2d Cir.1984).

The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment. *See, e.g., Seiden Associates, Inc. v. ANC Holdings, Inc.,* 959 F.2d at 428. We review *de novo* questions as to the ambiguity and meaning of the language of a contract, *see, e.g., Gil Enterprises, Inc. v. Delvy,* 79 F.3d 241, 245 (2d Cir.1996); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 930 F.2d 1021, 1026 (2d Cir.1991), and as to the propriety of summary judgment, *see, e.g., Bowman v. Allstate Insurance Co.,* 238 F.3d 468, 470 (2d Cir.2001).

We see no ambiguity in the duration term of the Agreement at issue here. Although Omni indicates that it expected its contractual relationship with Revco to last beyond March 1998, the Agreement

itself provided for a duration of "a period of not less than one (1) year, commencing March 3, 1997" (Agreement at 2), and imposed no lengthier obligation. Whatever Omni's greater hopes or expectations may have been, they were not part of the parties' ultimate agreement. Indeed, Omni concedes as much when it acknowledges that "Omni Quartz requested from Revco that it make a written three-year agreement to run the Omni Quartz program" (Omni brief on appeal at 13), and that in March 1997 "Revco ultimately agreed to commit to a *one-year* program" (Omni brief on appeal at 14 (emphasis added)). Omni's contention that CVS/Revco's notification in December 1997 that CVS/Revco would not continue the relationship with Omni beyond March 1998 constituted a breach is thus contrary to the unambiguous terms of the Agreement, and the district court properly refused to allow Omni to offer extrinsic evidence that the parties intended to impose a longer obligation on Revco in order to maximize the benefit to Omni.

Nor does the record permit an inference that CVS/Revco's December 1997 notification ended the relationship prior to March 1998. Any suggestion by Omni that CVS/Revco discontinued its sales of Omni watches prior to March 1998 is belied by Omni's admission that Omni continued to supply watches to Revco stores through July 1998.

In sum, we see no error in the district court's conclusions that the Agreement as written did not require CVS/Revco to continue the relationship beyond March 1998 and that CVS/Revco's decision not to continue beyond that point was not a breach of contract. Nor has Omni called our attention to any evidence in the record to suggest that the district court erred in concluding that there was no genuine issue to be tried as to CVS/Revco's good faith in the performance of its obligations to sell Omni watches during the one-year term specified in the Agreement.

B. *The Obligation To Run Four Promotions During the One–Year Term*

 It is far less clear, however, that CVS/Revco fulfilled its obligation "to run four (4) promotions" (Agreement at 2, ¶ III.B.) during the year commencing March 3, 1997. CVS/Revco's motion for summary judgment did not mention that obligation, and Omni's opposition papers stated that CVS/Revco had run only two of the four. The district court, in granting summary judgment to CVS/Revco, did not expressly mention the four-promotions obligation.

In arguing this appeal, CVS/Revco argues that "there is no dispute that the promotions occurred," stating, with citations to pages in the appellate appendix, that

> [i]n the fall of 1997, a Christmas promotion of diamond style watches, as well as post-Christmas promotions for January/February and Easter were planned. (A 94, 129, 144–145, 407) There also is evidence in the record that in January and February of 1998, CVS promoted Omni Quartz watches through a temporary price reduction ("TPR") of $5 off. (A 365, 462)

(CVS/Revco brief on appeal at 6 n. 1.) The documents cited, however, do not show definitively that any of these "planned" promotions actually took place. For example, although the document at A 129 bears CVS manager Stephen T. Burbridge's handwritten notation "Diamond PO for Xmas Promotion (# 860304)?," and at A 145 his handwritten notes include the words "Diamonds Promotion for C'Mas," the last page of another document on which CVS/Revco relies, a memorandum

addressed to Burbridge, states, "You decided not to do the Diamond Watch Promotion for Christmas" (A 463). Other documents relied on by CVS/Revco refer to, *inter alia*, "a January sale and a February ad event [that] *were going to* take place" (A 94 (emphasis added)), and "indicat[ions] that ... two promotions" were "*scheduled* ... for January and February" (A 462 (emphasis added)). But the two sources cited by CVS/Revco for the proposition that these planned promotions actually occurred are hardly dispositive. One was an excerpt from Burbridge's deposition, in which he stated:

> In fact, we did *try to* put something in in January and February which was called a TPR, a temporary price reduction of $5 off, I think, all Omni watches, but *I'm not a hundred percent positive.*
> ...
> Q. That's something that you put into place with discussions with Omni?
> A. I believe we had *talked about* different promotional events to try to sell some goods, yes.

(A 365 (emphases added).) The only other support cited by CVS/Revco for the proposition that the January and February 1998 promotions actually occurred was A 462, a document dated November 5, 1997, which obviously could not show whether the planned events in fact took place several months thereafter.

We conclude that, although this part of Omni's contract claim would appear to be *de minimis*, CVS/Revco was not entitled to judgment as a matter of law with respect to its obligation to conduct four promotions of Omni products during the period March 3, 1997, through March 2, 1998. Accordingly, we vacate so much of the judgment as dismissed Omni's claim that CVS/Revco breached the Agreement by holding only two such promotions and we remand for such further proceedings as may be warranted for the resolution of that claim. We do not foreclose the possibility that, after further development of the record, CVS/Revco may be entitled to summary judgment on that aspect of the case as well.

### CONCLUSION

We have considered all of Omni's arguments on this appeal and, except as indicated above, have found them to be without merit. The judgment of the district court is vacated to the extent that it dismissed Omni's claim that CVS/Revco failed to run two contractually-agreed promotions, and to that extent the matter is remanded for further proceedings not inconsistent with this opinion. In all other respects, the judgment is affirmed.

No costs.