# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 10, 2006  Decided August 18, 2006

No. 04-7167

CONSEIL ALAIN ABOUDARAM, S.A.,
APPELLANT/CROSS-APPELLEE

v.

JACQUES DE GROOTE,
APPELLEE/CROSS-APPELLANT

———

Consolidated with
04-7168

———

Appeals from the United States District Court
for the District of Columbia
(No. 01cv00006)

———

*James L. Marketos* argued the cause for appellant/cross-appellee. With him on the briefs was *Alexander C. Vincent*.

*Stephen Sale* argued the cause for appellee/cross-appellant. With him on the briefs was *John D. Quinn*.

Before: TATEL and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Plaintiff Conseil Alain Aboudaram, S.A. ("CAASA"), a Swiss corporation, sued Jacques de Groote, a Belgian national, claiming that de Groote failed to repay CAASA for loans the corporation made to him under a pair of promissory notes. De Groote asserted that it was he and not CAASA who was owed money. He filed counterclaims alleging that CAASA failed to pay him for consulting work he performed for the corporation. Although a jury sided with CAASA on both its claim and de Groote's counterclaims, the district court overturned the verdict as to the former. We affirm the district court's decision in all respects.

I

CAASA is a Swiss corporation owned principally by Alain Aboudaram and his family. It offers financial advisory services to a range of commercial and governmental clients. De Groote is a Belgian national and resident of the District of Columbia, who once served as an Executive Director at the World Bank. Aboudaram and de Groote met in 1990 and for several years had a mutually profitable relationship. De Groote parlayed his extensive contacts in government and international finance into business opportunities for Aboudaram, who in return aided de Groote by helping him meet his personal financial obligations. Aboudaram's most important assistance to de Groote was to loan him money so that he could avoid defaulting on the mortgage on his Georgetown townhouse. Both parties agree that Aboudaram extended those loans in his personal capacity, and that de Groote continues to owe Aboudaram for them.

During the 1990s, De Groote also forged a relationship with Aboudaram's corporation, CAASA. Through it, de Groote gained more than $1 million -- and this lawsuit. Two aspects of that relationship form the basis of the present dispute.

The first, which underlies CAASA's breach of contract claim, involves two promissory notes pursuant to which CAASA loaned money to de Groote. Each note was identical to the other in all relevant respects, except for its date and "principal sum." The first note was dated December 19, 1995, and stated a principal sum of $400,000; the second was dated October 13, 1998, and stated a principal sum of $100,000. *See* J.A. 108-09, 111-12. In both, de Groote agreed to pay on demand "to the order of Conseil Alain Aboudaram S.A. [CAASA] . . . the principal sum . . . or, if less, the aggregate principal amount of all advances made hereunder by the Lender to the Borrower (including advances made prior to the date hereof), outstanding at the time of such demand, together with interest" at a set rate. J.A. 108, 111. Both notes defined CAASA as the "Lender," and de Groote and his wife, collectively, as the "Borrower." *Id*. The notes were to be "governed by and construed in accordance with the laws of the State of New York." *Id*. at 109, 112. Each note was secured by a deed of trust on de Groote's Georgetown townhouse.

CAASA alleges that de Groote borrowed extensively under the two notes and that he failed to repay those borrowings. CAASA -- but not Aboudaram personally -- sued de Groote for breach of contract on January 3, 2001. When the case went to trial in early 2004, the two sides offered the jury fundamentally different views of their dealings under the notes. Aboudaram testified that he and de Groote understood the promissory notes to cover not only CAASA's corporate loans to de Groote, but Aboudaram's personal loans as well. For his part, de Groote testified that the promissory notes covered only loans that CAASA made to him, and did not include Aboudaram's personal advances. If Aboudaram was correct that the promissory notes held by CAASA applied to Aboudaram's personal loans, then CAASA stood to recover more than $500,000 in unpaid principal and interest. *See CAASA v. de*

*Groote*, No. 01-0006, Mem. Op. at 7 (D.D.C. June 7, 2004). By contrast, if de Groote was correct, then CAASA stood to recover nothing, as CAASA had loaned de Groote only about $25,000 under its own name and de Groote had repaid it all. *See id.* at 5 n.6.

The other relevant aspect of the parties' relationship, which underlies de Groote's counterclaims, involves consulting work that de Groote performed for CAASA. Among the transactions that de Groote alleges he worked on was CAASA's representation of SkodaExport, a Czech company that sought advice on obtaining a contract from the World Bank to construct an oil pipeline in India. De Groote claims to have completed several tasks for CAASA on behalf of SkodaExport, among them exploring the status of the project within the World Bank, determining how much money the Bank had earmarked for it, identifying SkodaExport's potential competitors, and introducing Aboudaram to the Bank official in charge of the project.

The parties stipulated that CAASA received nearly $8.9 million for its work on behalf of SkodaExport. *See* Mem. Op. at 4 n.3 (June 7, 2004). They disputed, however, the amount of compensation owed to de Groote. According to de Groote, he and Aboudaram orally agreed that CAASA would pay de Groote one-third of the fees CAASA earned from SkodaExport, which would amount to almost $3 million. CAASA denied that it had agreed to pay de Groote for his SkodaExport work on a percentage basis and instead insisted that it had already compensated him on flat-rate terms for individual services rendered. The parties agree that CAASA did pay de Groote at least $1 million. *See* Appellant's Br. 12 n.24; Appellee's Br. 3.

Before the case was submitted to the jury, de Groote moved for judgment as a matter of law under Federal Rule of Civil

Procedure 50(a) against CAASA's breach of contract claim, contending that the plain language of the promissory notes did not encompass loans made by Aboudaram in his personal capacity. The court reserved judgment on the motion in order to permit thorough briefing of the issue. The jury then returned verdicts in favor of CAASA on both its claim and de Groote's counterclaims. Thereafter, pursuant to Rule 50(b), de Groote renewed his motion for judgment as a matter of law against CAASA's claim. This time, the district court granted de Groote's motion, holding that "the unambiguous language of the promissory notes between CAASA and de Groote causes them to extend only to debts" between those two parties, debts "that have already been repaid." Mem. Op. at 19 (June 7, 2004).[1]

CAASA filed a motion for reconsideration, which the district court denied. *See CAASA v. de Groote*, No. 01-0006, Mem. Op. at 6 (D.D.C. Aug. 31, 2004). At the same time, de Groote filed a motion to sanction CAASA for discovery abuses under Federal Rule of Civil Procedure 37, which the district court also denied. *See id*. The court then entered judgment "for CAASA as to de Groote's counterclaims and for de Groote on CAASA's claim[] on the promissory notes." *Id*. Both parties filed timely notices of appeal. We consider CAASA's challenge in Part II and de Groote's in Part III.

---

[1]The district court also denied a motion by CAASA to reform the promissory notes to reflect its assertion that de Groote's promise was to pay both CAASA's and Aboudaram's advances, and to amend its complaint to state an additional claim for reformation of the notes. *See* Mem. Op. at 9-12 (June 7, 2004). CAASA has made no argument regarding that motion on appeal.

6

II

CAASA maintains that the district court erred in granting de Groote judgment as a matter of law against CAASA's claim for breach of the promissory notes. We review that ruling de novo and may affirm "only if we find . . . that no reasonable jury could [have reached] a verdict in the plaintiff's favor." *Holbrook v. Reno*, 196 F.3d 255, 259 (D.C. Cir. 1999).

As the district court noted, "[u]nder New York law, the initial interpretation of a contract is a matter of law for the court to decide." Mem. Op. at 9 (June 7, 2004) (quoting *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998)). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander*, 136 F.3d at 86; *see Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002); *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990). And "'where the language and the inferences to be drawn from it are unambiguous,'" a district court may "'construe a contract as a matter of law and grant . . . judgment accordingly.'" *Alexander*, 136 F.3d at 86 (emphasis omitted) (quoting *Cable Science Corp. v. Rochdale Vill., Inc.*, 920 F.2d 147, 151 (2d Cir. 1990)).

We agree with the district court that "[t]he stubborn, unavoidable fact at the root [of this dispute] is that the promissory notes, on their faces, cover only 'advances [made] hereunder by the Lender to the Borrower,' and unequivocally define CAASA as the Lender." Mem. Op. at 12 (June 7, 2004) (quoting First. Am. Compl. Exs. A, B (J.A. 108, 111)). The wording of the promissory notes -- drafted by CAASA's own corporate counsel -- leaves no room for anything but a single interpretation: that CAASA alone is the lender under the notes. Indeed, even CAASA's litigation counsel conceded that the

phrase "advances made hereunder by the Lender" is not ambiguous, and can only be read as covering advances made by the corporation. *See* Oral Arg. Tr. at 10; *see also* Trial Tr. at 88-89 (Feb. 24, 2004).

To circumvent the acknowledged clarity of the contractual language, CAASA maintains that the district court should have considered extrinsic evidence, including the parties' behavior before and after executing the promissory notes. Such evidence, the corporation asserts, would have demonstrated the parties' intent to incorporate Aboudaram's personal advances within the ambit of the notes. In New York, however, the well-established rule is that "[o]nly when the language of the contract is ambiguous may a court turn to extrinsic evidence of the contracting parties' intent." *Curry Road*, 893 F.2d at 511; *see In re Silberman's Will*, 242 N.E.2d 736, 740-41 (N.Y. 1968). Conversely, "a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract." *Omni Quartz*, 287 F.3d at 64; *see Namad v. Salomon Inc.*, 543 N.E.2d 722, 723 (N.Y. 1989). Because the language of the promissory notes is unambiguous, the district court properly barred reference to extrinsic evidence.

CAASA nonetheless insists that, if we would just look at the extrinsic evidence, we would see that the notes are in fact ambiguous; moreover, once this realization dawned on us, examination of additional extrinsic evidence would lead inexorably to the conclusion that the notes are broad enough to cover Aboudaram's personal advances. The circularity of this argument requires little discussion. Under New York law, "the question of ambiguity . . . must be determined from the face of the agreement, without reference to extrinsic evidence. Mem. Op. at 15 (June 7, 2004) (citing *Kass v. Kass*, 696 N.E.2d 174, 180 (N.Y. 1998)). "[E]xtrinsic or parol evidence is not admissible to create an ambiguity in a written agreement that is

otherwise clear and unambiguous." *Petracca v. Petracca*, 756 N.Y.S.2d 587, 587 (N.Y. App. Div. 2003).

CAASA further argues that the district court mistakenly failed to consider a ledger sheet or "grid" that was attached to a copy of the December 19, 1995 promissory note that was in turn appended to the Complaint. The grid is titled "Advances and Payments of Principal," and it contains eight dollar figures under the heading "Amount of Advance." J.A. 110. CAASA contends that the grid provides intrinsic evidence of the note's ambiguity, which thus warrants resort to extrinsic evidence to divine the note's true meaning.

There are two problems with this argument. First, it is not clear whether the grid was entered into evidence. At trial, de Groote objected to its admission on the ground that the numbers on the grid were not on the document he signed. CAASA then consented to detaching the grid from the promissory note and excluding it from the record. *See* Mem. Op. at 10 (June 7, 2004). In any event, the grid -- which contains neither signatures nor initials -- does not "identify Aboudaram as the source of the recorded advances or otherwise facially contradict the language of the note." Mem. Op. at 4 (Aug. 31, 2004). We therefore agree with the district court that Aboudaram "cannot now insist upon confounding what is, on its face, a straightforward document drafted to CAASA's specifications." *Id*. at 5.

Finally, CAASA contends that de Groote should have been estopped from denying his liability to CAASA, principally because his pretrial pleadings admitted that CAASA made advances to him under the promissory notes. Indeed, there was a "stipulated agreement of the parties that CAASA made some payments [under the notes] to de Groote -- totaling . . . approximately $25,000." Mem. Op. at 5 n.6 (June 7, 2004).

The issue at trial, however, was not the money that CAASA advanced to de Groote, but the money that Aboudaram personally loaned him. CAASA bore the burden of proving that the promissory notes covered those loans, *see Paz v. Singer Co.*, 542 N.Y.S.2d 10, 11 (N.Y. App. Div. 1989), and de Groote's concession regarding other unspecified advances did not relieve the corporation of that burden.

In sum, we find no error in the district court's grant of judgment as a matter of law in favor of de Groote and against CAASA on the latter's claim for breach of contract.[2]

### III

De Groote asserts that the district court erred both in instructing the jury regarding his counterclaims, and in denying his motion for discovery sanctions under Federal Rule of Civil Procedure 37. We review the lawfulness of the district court's jury instructions de novo, *see Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993), and its denial of Rule 37 sanctions for abuse of discretion, *see Hull v. Eaton Corp.*, 825 F.2d 448, 452 (D.C. Cir. 1987).

---

[2]The district court also rejected CAASA's motion for reconsideration. That motion focused primarily on the grid purportedly attached to the December 19, 1995 promissory note, and the district court rejected it for the reasons affirmed in the text above. The court also concluded that "[n]one of the other issues mentioned by CAASA in its motion for reconsideration approach the 'clear error or manifest injustice' standard" required to grant relief. Mem. Op. at 5 n.5 (Aug. 31, 2004) (referencing the standard discussed in *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). We review the denial of such a motion for abuse of discretion, *see Firestone*, 76 F.3d at 1208, and find no such abuse here.

10

A

The verdict form posed the following question to the jury regarding de Groote's counterclaims: "Did CAASA and de Groote reach an agreement (i.e., a contract) requiring CAASA to pay de Groote one-third of the fees Skoda[E]xport paid CAASA in exchange for de Groote's consulting services to CAASA?" J.A. 718. De Groote insists that this verdict form and its associated jury instructions constitute reversible error and necessitate a new trial, because from them the jury "could conclude that CAASA and de Groote had no agreement for [de Groote's] services" when, in fact, the parties had "always stipulated an agreement for services between de Groote and CAASA." Cross-Appellant's Reply Br. 20-21. In de Groote's view, the court should have instructed the jury that there was a contract, and then freed the jury to choose any figure it believed to be the contract's compensation term.

Under New York law, a binding contract requires "agreement with respect to all material terms," *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999), and a price term is certainly material, *see Tufano v. Morris*, 728 N.Y.S.2d 835, 837 (N.Y. App. Div. 2001). It is a nice law school exam question whether a contract is binding when the parties stipulate to its existence but disagree about a material term. In context, however, it is highly doubtful that the jury thought it was sitting for such an exam. As de Groote notes, the witnesses did not dispute that CAASA agreed to pay him for his work on the SkodaExport project. Indeed, there was no dispute that CAASA did pay him at least $1 million. *See* Appellant's Br. 12 n.24; Appellee's Br. 3. This left only one question for the jury: whether the parties had reached an agreement "requiring CAASA to pay de Groote one-third of the fees SkodaExport paid CAASA," exactly the question the verdict form asked. J.A. 718. The possibility that the jury might

have "conclude[d] that CAASA and de Groote had no agreement for [de Groote's] services" at all, Cross-Appellant's Reply Br. 21, is simply too speculative to be of concern. Even if the form of the question left that possibility open, it was at best a harmless error. *See* FED R. CIV. P. 61; *Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 146 F.3d 983, 992 (D.C. Cir. 1998).

B

Rule 37 authorizes a district court to sanction a party that "fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2). De Groote alleges that he was "repeatedly ambushed at trial by CAASA's reliance on evidence it concealed, [which] in many cases directly contradicted evidence [it] produced in discovery." Appellee's Br. 34. According to de Groote, these "ambush[es]" had the effect of forcing him "to spend much of the trial responding to CAASA's concealed evidence, tainting [his] case and eliminating his ability to defend and to prosecute the case coherently." *Id*. He therefore sought "severe sanctions" under Rule 37 in order to ensure that "CAASA's pervasive discovery abuses [were] deterred and punished." *Id*. at 35-36.

In denying de Groote's Rule 37 motion, the district court observed that "'[t]he central requirement of Rule 37 is that any sanction must be just.'" Mem. Op. at 5 (Aug. 31, 2004) (quoting *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996)). The court concluded that granting the sanctions requested by de Groote "would not be just" in light of "the frequent, untimely, and inefficient filings by *both* sides." *Id*. at 6. As the court explained, "CAASA could almost certainly match the litany of discovery abuses recited by de Groote if it chose to consume yet more ink and paper than it already has." *Id*. Our review of the record discloses that the district court

displayed admirable patience in adjudicating what was obviously a bitter personal dispute, and we perceive no ground for second-guessing its decision to deny the motion for sanctions.

## IV

There is, of course, one unexplained mystery in this case. As the district court noted, "Aboudaram may well have an action against de Groote for unpaid personal debts, but he is a stranger both to this case and to the plain language of the promissory notes." Mem. Op. at 4 (Aug. 31, 2004). Once the parties' relationship broke down, there was nothing Aboudaram could have done to fix the latter problem. Yet, while he could have readily cured the former simply by becoming a plaintiff, Aboudaram never sought to make himself one. *See id.* Although this mystery remains unresolved, the district court's reasoning and rulings are unimpeachable, and we therefore affirm the judgment in all respects.

*Affirmed.*