ARBITRON, INC., Plaintiff,

v.

TRALYN BROADCASTING, INC., JMD, Inc., d/b/a WLNF–FM/WROA–AM/WZKX–FM/WGCM–AM–FM, Defendants.

No. 01 Civ. 9652(RWS).

United States District Court, S.D. New York.

June 5, 2003.

Ostrolenk, Faber, Ferb & Soffen, New York, NY (Alfred R. Fabricant, Lawrence C. Drucker, of counsel), for plaintiff.

Lawrence J. Bernard, Jr., Washington, DC, for Defendant JMD, Inc.

## OPINION

SWEET, District Judge.

Defendant JMD, Inc., d/b/a WLNF–FM/WROA–AM/WZKY–FM/WGCM–AM–FM ("JMD") has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., and for monetary judgment against plaintiff Arbitron, Inc. ("Arbitron"). Arbitron has moved to compel JMD to respond to document requests and interrogatories, pursuant to Rules 33(b)(3), 34(b), and 37(a) of the Fed.R.Civ.P. JMD's motion for summary judgment is granted, but monetary judgment is denied for the reasons set forth below. Arbitron's motion to compel is denied as moot.

### Prior Proceedings

This action was commenced on November 1, 2001. The instant motion was marked fully submitted on May 21, 2003.

### The Facts

The facts are set forth based upon the Local Rule 56.1 statements of the parties and supporting declarations.

In 1997, Arbitron entered into a Station License Agreement to Receive and Use Arbitron Radio Listening Estimates (the "Agreement") with Tralyn Broadcasting, Inc. ("Tralyn"). The Agreement permitted Tralyn to use Arbitron listening data reports in operating radio station WLUN–FM in the Gulfport, Mississippi area. WLUN's call letters were subsequently changed to WLNF.

On or about October 31, 1999, JMD entered into an Asset Purchase Agreement with Tralyn, which included radio station WLNF. At the time, JMD owned or controlled at least four other stations in the Gulfport, Mississippi market.

The Asset Purchase agreement assigned the Arbitron Agreement to JMD, and JMD assumed responsibility for paying Arbitron. Neither JMD nor Tralyn obtained Arbitron's prior written consent to the assignment of the agreement, and they did not provide Arbitron with notice of a change in ownership of WLNF. JMD reimbursed Tralyn for money it paid to Arbitron or paid money directly to Arbitron in the amount of $1,729.57 each month through June of 2000. In total, JMD paid $19,575.27 for Arbitron's services.

During the months JMD was responsible for paying fees under the Agreement, Arbitron provided a copy of the Fall 1999 Ratings Book and Research Data (the "Fall Book") when published in February 2000.

In a June 28, 2000 letter, Arbitron wrote JMD that "[i]t has come to Arbitron's attention that on or about October 31, 1999, October 31, 1999, JMD, Inc. acquired the assets of broadcast station WLNF–FM ..." Arbitron then notified JMD that it was exercising its right to increase the fees payable by JMD under ¶ 11 of the Agreement. Paragraph 11 of the Agreement provides:

> In the event that Arbitron consents to the assignment of this Agreement, Arbitron reserves the right to redetermine the rate to be charged to the assigned.... Station agrees that ... if it is or was purchased or controlled by an entity owning or otherwise controlling other radio stations in this Market or an adjacent Market, ... Station ... will report the change and the effective date thereof to Arbitron within 30 days of such change. In the event of such occurrence, station further agrees that Arbitron may redetermine its Gross Annual Rate for the Data, Reports and Services licensed hereunder, as well as any Supplementary Services, effective the first month following the date of the occurrence. Notwithstanding Station's failure to notify Arbitron, pursuant to provisions of this paragraph, Arbitron

may redetermine the Station's Gross Annual Rate for all Data, Reports and Services, as well as any Supplementary Services, based on the foregoing, effective the first month following the date of the occurrence.

Arbitron redetermined JMD's annual license fees to reflect a five station license resulting in a revised monthly installment due of $5,784.93.

On July 3, 2000, Arbitron sent an invoice to JMD for $22,2391.00, which it claimed was the amount due to license the four additional JMD stations in the market for the Spring 2000 Ratings Book and Research Data (the "Spring Book"). JMD never paid and subsequently refused to pay these additional license fees for the Spring Book. JMD also stopped paying the original monthly amount of $1,779.57 under the Agreement. Arbitron thus suspended delivery of its Reports in accordance with ¶ 5 of the Agreement.

The Agreement is set for five years commencing on October 1, 1997 and running through September 30, 2002. On April 5, 2001, Arbitron sent a demand letter to JMD advising that the amount owed to Arbitron was $62,711.99, representing the full balance owed for the term of the agreement.

### The Standard for Summary Judgment

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see generally 6 James Wm. Moore, et al., Moore's Federal Practice ¶ 56.15 (2d ed.1983). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of showing that there are no material facts in dispute, and the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion—in this instance, the plaintiffs. *Bickhardt v. Ratner*, 871 F.Supp. 613 (S.D.N.Y.1994) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997).

### Applicable Law

Under the Agreement, New York law governs this case. Paragraph 15 states, "This Agreement shall be deemed to be an agreement made under, and to be construed and governed by, the laws of the State of New York, exclusive of its choice of law rules."

### The Agreement's Escalation Clause is Vague and Unenforceable

Neither the escalation clause in ¶ 11, nor any other section of the Agreement, contains any basis for determining the new rate to be paid Arbitron in the

event changes in ownership occur.[1] Courts have refused to enforce similarly uncertain agreements. For instance, where a permit failed to specify the amount of rent reduction in the event the landlord exercised an option to reclaim a portion of the premises, and the court held there "was not a sufficiently definite offer which could give rise to an enforceable agreement." *In Matter of Express Indus. and Terminal Corp.,* 93 N.Y.2d 584, 591, 693 N.Y.S.2d 857, 715 N.E.2d 1050 (1999).

■ It is not just that the Agreement does not specify a new rate, but it does not contain any description of the methods to be used or factors to be considered in its redetermination. It thus purports to give Arbitron unfettered discretion to change the rates in any fashion it chooses, and Arbitron's claims in this proceeding are more than triple the original monthly rate of $1,779. "If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Kensington Court Assocs. v. Gullo,* 180 A.D.2d 888, 579 N.Y.S.2d 485, 486 (3rd Dep't 1992). *See also* 17A Am.Jur.2d *Contracts* § 211 (2002) ("As a general rule, a reservation to a party of an unlimited right to determine the nature and extent of the compensation he will make renders his promise too indefinite to be enforceable."). Thus, where a letter agreement did "not provide a methodology for fixing the consideration to be paid for each release," the court held it to be unenforceable. *Kensington Court,* 579 N.Y.S.2d at 486.

■ Likewise, in *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher,* the court struck a renewal clause in a lease providing for future agreement on rent as overly vague.[2] 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981). It would have "sufficed" for the "methodology for determining the rent ... to be found within the four corners of the lease," but there must be some "objective, extrinsic event, condition or standard on which the amount was to depend". *Id.* at 110, 436 N.Y.S.2d 247, 417 N.E.2d 541. The court explained:

> [B]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained. Otherwise, a court, in intervening would be imposing its own conception of what the parties should or might have undertaken, rather than confining itself to the implementation of a bargain to which they have mutually committed themselves. Thus, definitiveness as to material matters is of the very essence of contract law. Impenetrable vagueness and uncertainty will not do.

*Id.* at 109, 436 N.Y.S.2d 247, 417 N.E.2d 541.

■ This is not a case where there is an ambiguity in need of interpretation in the Agreement. As frequently held, "[a]mbiguous language is language that is 'capable of more than one meaning ...'" *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 66 (2d Cir.2000); *see also Consarc*

---

1. The Agreement does not contain any reference to a rate card or other document which could be used to calculate a new rate under the escalation clause. Similarly, neither Arbitron's June 28 letter informing JMD that it was raising its rate, nor the invoice stating JMD's new rate, contains any mention of a rate card. Arbitron, moreover, has complete discretion to determine the rates set forth in the rate cards.

2. In the *Delicatessen* case, as here, at issue is only a single clause of the agreement. 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541. There can be a meeting of minds with regards to the rest of the agreement, but not with a particular clause—be it a renewal or escalation clause. The entire agreement need not be void.

*Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir.1993) (same); *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's London, England*, 136 F.3d 82, 86 (2d Cir.1998) (same). Here, the problem is that a term is missing, not that it is susceptible to multiple interpretations. When there is no recourse to an objective standard, a material term of the agreement simply does not exist, and there is "no room for legal construction or resolution of ambiguity." *Delicatessen*, 52 N.Y.2d at 111, 436 N.Y.S.2d 247, 417 N.E.2d 541. "If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir.1993). Thus, extrinsic evidence cannot come in to save the escalation clause.

### Lack of Services Provided by Arbitron

Arbitron provided the required services under the Agreement. This is really a non-issue as JMD, "after further consideration and investigation," concedes that Arbitron sent the Fall Book to Tralyn in February, 2000. (Def.'s Reply Mem. at 2.) Arbitron may not have provided the Spring Book but by that time JMD was no longer paying for services. JMD is thus not entitled to monetary judgment against Arbitron.

### Conclusion

For the reasons set forth, JMD's motion for summary judgment is granted, but monetary damages are denied. Arbitron's motion to compel is denied as moot.

Submit judgment on notice.

It is so ordered.