NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0886n.06

No. 10-4614

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**

*Aug 13, 2012*

LEONARD GREEN, Clerk

GEOSYNFUELS, LLC,

      Plaintiff-Appellee,

v.

JOSEPH T. GORMAN,

      Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____/

Before:     MARTIN, SUTTON, and BALDOCK,[*] Circuit Judges.


     BOYCE F. MARTIN, JR., Circuit Judge. GeoSynFuels, LLC, filed a breach of contract suit against Joseph Gorman. Gorman now appeals the district court's grant of summary judgment in favor of GeoSynFuels and its denial of Gorman's motion for summary judgment. For the reasons that follow, we **AFFIRM** both the district court's grant of summary judgment in favor of GeoSynFuels and its denial of Gorman's motion for summary judgment. We **REMAND** the case to the district court for execution of the judgment.

**I.**

     GeoSynFuels, a Delaware limited liability company whose principal place of business is in Colorado, sought to fund the expansion of its operations by selling its equity through a private

_____

[*] The Honorable Bobby R. Baldock, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

placement. GeoSynFuels sent a private placement memorandum describing the details of the potential transaction to Gorman, an Ohio citizen. On December 9, 2009, Gorman signed a document, entitled "Subscription Agreement," that was attached as an appendix to the private placement memorandum. The Subscription Agreement left blank the number of shares and the aggregate purchase price for the subscriber to fill in. Gorman, the subscriber, filled in his desired number of shares and the aggregate purchase price, signed the document, and returned the executed Subscription Agreement to GeoSynFuels. Gorman did not send GeoSynFuels any money. Todd Harvey, GeoSynFuels' Chief Executive Officer, signed the document in his official capacity and dated his signature December 15. Neither Harvey nor GeoSynFuels notified Gorman that Harvey had signed the document. On February 11, 2010, Gorman sent an email to Eli Jacobs, the chairman of GeoSynFuels' board, asking to serve as chairman of either GeoSynFuels' audit committee or its compensation committee. Jacobs responded, offering Gorman the chairmanship of the audit committee. Gorman accepted the offer by email, and said he would wire the money to GeoSynFuels to purchase the shares on Monday, February 15. On February 19, in response to an email from Jacobs asking why the money had not yet been sent, Gorman said that his accountant had told Gorman that "given all of the near-term cash calls to which [Gorman was] committed," Gorman would not be able to send the money until he had sold an airplane. A few days later, Gorman told GeoSynFuels he would not be sending the money. In March, GeoSynFuels filed suit in federal district court, alleging that Gorman breached the contract.

Both parties moved for summary judgment. The district court found that a valid contract existed between the parties and that Gorman had breached that contract by not performing his

contractual obligation to pay money to GeoSynFuels. The district court granted GeoSynFuels'

summary judgment motion and denied Gorman's summary judgment motion. Gorman appeals the

district court's judgment; the district court has stayed execution of the judgment pending this appeal.

This case requires us to determine whether the parties formed a contract. We look first at the

Subscription Agreement to answer this question. The relevant parts of the Subscription Agreement

provide as follows:

> 1.1 GeoSynFuels, LLC, a Delaware limited liability company (the "Company"),
> is offering for sale an aggregate of up to 300,000 of the Company's common shares
> (the "Common Shares"). The undersigned (the "Subscriber") hereby subscribes for
> the purchase of such number of Common Shares as set forth on the signature page
> hereto, for the consideration set forth on the signature page hereto (the "Purchase
> Price") (such subscription referred to herein as the "Subscription"). The terms of the
> offering of the Common Shares . . . are set forth in that certain Confidential Private
> Placement Memorandum dated October 2008 . . . .
>
> 1.2 The Subscriber shall fully complete this Agreement . . . . Upon the execution
> hereof, the Subscriber shall deliver to the Company (i) two (2) executed copies of this
> Agreement and (ii) the Purchase Price . . . .
>
> 1.3 As soon as practicable after receipt of the foregoing items, the Company shall
> notify the Subscriber whether the Subscription has been accepted in whole or in part.
> If the Company accepts all or a portion of the Subscription, this Agreement shall
> become effective, and the Company shall promptly deliver to the Subscriber one (1)
> fully-executed copy of this Agreement, countersigned by the Company.

Gorman is the "Subscriber." The term "Agreement," though used throughout the

Subscription Agreement, is not defined. The term "Subscription" is defined as the specific

subscription for the purchase of shares by Gorman. The "Purchase Price" is the amount of

consideration necessary to purchase the shares that the Subscriber has agreed to purchase.

Section 4.2 is a merger clause stating that the "Agreement contains the entire agreement between the parties . . . ." Section 4.4 provides that modifications and amendments to the Agreement may only be made in writing, and Section 4.5 provides that New York law governs the construction and enforcement of the Agreement.[1]

With the pertinent facts before us, we turn to the issues on appeal.

**II.**

"This Court reviews a district court's grant of summary judgment *de novo*." *Savage v. Gee*, 665 F.3d 732, 737 (6th Cir. 2012) (alteration and internal quotation marks omitted). Summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"Although the denial of a motion for summary judgment is usually an interlocutory order that is not immediately appealable, where an appeal from a denial of summary judgment is presented in tandem with a grant of summary judgment, this Court has jurisdiction to review the propriety of the

---

[1] The parties do not address what law should govern the existence of the contract, which is a separate question from what law governs its construction and enforcement. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187. Because the parties chose New York law to govern construction and enforcement of the Subscription Agreement, and because the parties have both briefed the case assuming or expressly stating that New York law should govern the question of the existence of the contract and the case itself, we find that the parties intended New York law to govern the existence inquiry. Thus, we apply New York contract law in this case.

district court's denial of summary judgment." *Tenn. ex rel. Wireless Income Props., LLC v. City of Chattanooga*, 403 F.3d 392, 395 (6th Cir. 2005) (internal quotation marks omitted). "While the denial of a motion for summary judgment on purely legal grounds is reviewed de novo, a denial based on the finding of a genuine issue of material fact is reviewed for an abuse of discretion." *Id.* at 395-96 (citation and internal quotation marks omitted). The district court ruled that Gorman breached the contract with GeoSynFuels, and on that basis, denied Gorman's motion for summary judgment as a matter of law. Thus, we review de novo the denial of Gorman's motion for summary judgment.

### III.

The parties disagree on whether an enforceable contract exists; the answer to this question decides the case. "To establish the existence of an enforceable agreement [under New York law], a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 46 (N.Y. App. Div. 2009). To determine whether the parties formed a contract, we must decide two issues. First, we must determine whether Gorman's payment is a condition precedent to the formation of the contract, or if his payment is instead a condition precedent to performance under the contract. Second, we must determine whether the evidence shows the "mutual assent" required to create a binding contract under New York law.

1.     Condition Precedent

"A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."

*Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995) (internal quotation marks omitted). Under New York law, there are two kinds of conditions precedent: conditions precedent to the formation of a contract, and conditions precedent to obligations to perform under a contract. *Id.* Where a condition precedent to *formation* is not satisfied, there is no contract. *Id.* ("[N]o contract arises unless and until the condition occurs" (internal quotation marks omitted)). Where a condition precedent to *performance* is not satisfied, and satisfaction of that condition is within the control of the party seeking to avoid performance, that party cannot use his failure to meet the condition precedent to performance to avoid his obligation to perform under the contract. *Goodman v. Marcol, Inc.*, 184 N.E. 755, 756 (N.Y. 1933).

Gorman argues that his payment is a condition precedent to the formation of a contract by the parties. "[V]iew[ing] the factual evidence and draw[ing] all reasonable inferences in favor of the nonmoving party," *Banks*, 330 F.3d at 892, we hold that Gorman's payment was not a condition precedent to formation, but instead a condition precedent to performance. An action is a condition precedent to a contract's formation only if "the parties employ[] the unmistakable language of condition ('if,' 'unless and until')." *Oppenheimer*, 660 N.E.2d at 418. In *Oppenheimer*, the written agreement in question stated explicitly that no agreement would exist "unless and until" one party delivered a certain document to the other party. *Id.* at 416. The written agreement stated that, if the delivery condition did not occur, the agreement was "null and void." *Id.*

Here, Section 1.2 of the Subscription Agreement provides that Gorman "shall deliver" the Purchase Price and the signed Agreement. Section 1.3 of the Subscription Agreement provides that GeoSynFuels "shall notify" Gorman whether it accepts the subscription, and GeoSynFuels "shall

promptly deliver" a signed copy of th Subscription Agreement. These contractual provisions impose substantive obligations, and they are not conditions precedent to the contract's formation; rather, Gorman's obligation to pay is a condition precedent to GeoSynFuels' performance. There is no conditional language in the Subscription Agreement suggesting that the existence of a contract is dependent upon any action other than GeoSynFuels' acceptance. In fact, the Subscription Agreement notes that, "[i]f the Company accepts all or a portion of the Subscription, this Agreement shall become effective." Though GeoSynFuels did not immediately notify Gorman that it had accepted his subscription, it had indeed accepted it, as evidenced by Harvey's dated signature on the Subscription Agreement. GeoSynFuels thus satisfied the only condition precedent to the contract's formation specified by the Subscription Agreement. Moreover, Gorman's payment is not a condition precedent to formation, and therefore his nonperformance is irrelevant to the question of contract formation.

    2.     Mutual Assent

We move on to determine whether mutual assent to the contract is shown by the evidence. Under New York law—which follows the basic tenets of the common law of contracts— "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999). New York law requires that this assent be communicated by one party to the other party. *See* RESTATEMENT (SECOND) OF CONTRACTS § 19(2) (1981) ("The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may

infer from his conduct that he assents."); 1 WILLISTON ON CONTRACTS § 4.1 (4th ed. 1990)

("[M]utual assent is essential to the formation of informal contracts, but it must be noted that the

mutual assent must be manifested by one party to the other, and except as so manifested, is

unimportant."); *see also Yarnell v. Baldwin*, 497 N.Y.S.2d 268, 271 (N.Y. Sup. Ct. 1985) (quoting

1 WILLISTON ON CONTRACTS § 22 (3d ed. 1957) on this point of law).

GeoSynFuels sent Gorman a Subscription Agreement. Gorman filled out and signed the

Subscription Agreement and sent it to GeoSynFuels. Gorman's action is sufficient for us to conclude

that Gorman assented to the terms of the contract and adequately communicated that assent to

GeoSynFuels. Harvey signed the Subscription Agreement but did not notify Gorman that he had

done so. Merely signing a contract and filing it in a drawer, as GeoSynFuels initially did, is

insufficient to notify the other party of assent. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS

§ 19(2). For a different reason, GeoSynFuels' delivery to Gorman of the Subscription Agreement

with blanks to fill in the number of shares and the price to Gorman is insufficient to demonstrate

GeoSynFuels' assent because the document did not contain necessary terms (that is, the number of

shares and the price of those shares) of the contract. *See Express Indus.*, 715 N.E.2d at 1053.

Though neither GesoSynFuels' mailing nor Harvey's signature are sufficient to demonstrate

GeoSynFuels' assent to the contract, we find that the February email exchange between Gorman and

Jacobs is adequate evidence of GeoSynFuels' assent. In this exchange, Gorman requested a board

committee chairmanship, and, in the same email, promised to "forward promptly the money

committed." Jacobs responded by email to offer Gorman the position of Audit Committee Chairman.

Gorman accepted this position by email, and promised to wire on February 15 the Purchase Price

funds due under the Subscription Agreement. On February 19, in response to Jacobs's inquiry as to why Gorman had not yet wired the Purchase Price funds, Gorman reaffirmed his intent to wire the money pending the sale of his airplane. Notably, not until after Jacobs followed up with Gorman about the money and reminded him of "our agreement about your role as Director and Chair of the Audit Committee" did Gorman tell GeoSynFuels that he was unable to wire the money immediately. New York contract law requires only that the manifestation of assent be "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus.*, 715 N.E.2d at 1053. The reasonable reading of the correspondence between the parties is that GeoSynFuels had assented to binding itself to the agreement to purchase and sell shares of GeoSynFuels. Though the parties' correspondence does not include the clearest possible statement of assent by GeoSynFuels, the parties' discussion of Gorman's board position and agreement as to the payment of funds show that the "parties [were] truly in agreement with respect to all material terms" of the contract. *Id.* Thus, the parties formed a contract. Because there is a legally binding contract between the parties, Gorman is bound to deliver the Purchase Price funds to GeoSynFuels. *See, e.g.*, *Cauff, Lippman & Co. v. Apogee Fin. Grp., Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992).

We turn to Gorman's appeal of the denial of his motion for summary judgment. As we noted above, when parties appeal the outcome of cross-motions for summary judgment, we have jurisdiction to review the denial of a motion for summary judgment. Where the motion was denied as a matter of law, our review is de novo. Here, our finding in favor of GeoSynFuels requires finding against Gorman: because we find there was a contract between the parties, we affirm both

the district court's grant of GeoSynFuels' motion for summary judgment and the denial of Gorman's

motion for summary judgment.

**IV.**

The judgment of the district court is **AFFIRMED**. We **REMAND** the case to the district

court for execution of the judgment.