**GLOBAL PACKAGING SERVICES, LLC, Plaintiff,**

v.

**GLOBAL PRINTING AND PACKAGING, Defendant.**

**No. 15–CV–7747 (NSR)**

United States District Court, S.D. New York.

Signed 03/31/2017

488

Brian K. Condon, Condon & Associates, PLLC, Nanuet, NY, for Plaintiff.

Luisa M. Kaye, Kristin Elizabeth Marlowe, Wrobel Markham Schatz Kaye & Fox LLP, New York, NY, for Defendant.

## OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Global Packaging Services, LLC ("Plaintiff"), a packaging company incorporated in Florida, brings claims for breach of contract and tortious interference against Global Printing and Packaging ("Defendant"), a printing solutions company incorporated in Massachusetts, arising out of a breached commission agreements. Defendant now moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts, taken from the Amended Complaint and admissible materials submitted in connection with the pending motions, are either undisputed or described in the light most favorable to Plaintiff. *See, e.g., Costello v. City of Burlington,* 632 F.3d 41, 45 (2d Cir. 2011); *Kleinman v. Elan Corp.,* 706 F.3d 145, 152 (2d Cir. 2013).

Plaintiff Global Packaging is a Florida corporation with its corporate headquarters in Boca Raton, Florida, and with an office in Haverstraw, New York. (Am. Compl. ¶ 2.) Plaintiff is a packaging "broker[ ]," meaning that it "sells consumer goods packaging to consumer goods manufacturers." (*Id.* ¶ 6.) Defendant Global Printing is a Massachusetts corporation that is not authorized to do business in New York. (*Id.* ¶ 3.) Defendant runs an international printing company focusing on consumer packaging and commercial printing. (*Id.* ¶ 7.)[1]

In mid–2014, Plaintiff allegedly entered into an agreement with Defendant entitling Plaintiff to a commission for customers that it "placed" with Defendant with regard to "process[ing] orders through China." (*Id.* ¶¶ 1, 8.) The head of Global Packing, Richard Loos, dealt directly with the head of Global Printing, Douglas Dratch. (*Id.* ¶ 9.) As part of the agreement between Plaintiff and Defendant, Plaintiff would be entitled to a "$100,000 annual draw against any future commissions earned for any and all business" placed with Defendant. (*Id.* ¶ 10.) Defendant was to provide Plaintiff with a price for the requested work, Plaintiff would "add their desired markup," and the commission would be based on that total "sale price." (*Id.* ¶ 13.) Neither party has provided that agreement: Plaintiff did not attach it to its complaint, Defendant has not attached it to its motion papers, and the nature of the agreement—whether it is oral or written—is unknown.

The agreement commenced on September 1, 2014, and Plaintiff began receiving biweekly payments. (*Id.* ¶ 11.) During the course of the agreement, Plaintiff placed accounts with Defendant, including Quten Research Group, The Fountainhead Group, and the Advanced Frozen Foods. (*Id.* ¶ 12.) Plaintiff's efforts in this regard included initiating the relationship with the customer, developing the relationship, and bringing the business to Defendant. (*Id.* ¶ 15–16.) Plaintiffs commissions during this time ranged from 20% to 45%. (*Id.* ¶ 14.) The arrangement between the parties continued for "several months" but terminated in April 2015. (*Id.* ¶ 17.) Thus, despite performing its obligations under the agreement by placing customers with Defendant, Defendant has failed to pay Plaintiff the commissions it is owed. (*Id.* ¶¶ 28–29.)

---

1. The parties are diverse, and Defendant has not challenged personal jurisdiction.

Unbeknownst to Plaintiff at that time, during the course of the agreement between the parties and after it terminated, Dratch went to each of Plaintiff's customers—interfering with the existing relationships—and indicated that "Defendant would be replacing Plaintiff as their representative" and therefore the · customers should "no longer do business with the Plaintiff." (*Id.* ¶ 18–19.) Plaintiff alleges this was accomplished using "dishonest, unfair and improper" means and was done for "the sole purpose" of causing harm to Plaintiff. (*Id.* ¶¶ 35–36.) "[T]hese customers are no longer placing their orders through [.] Plaintiff, but directly with [ ] Defendant." (*Id.* ¶ 37.)

Using one customer, Quten Research Group, as an example, that interference cost Plaintiff approximately $400,000 that year. (*Id.* ¶ 20 (assuming a 20% margin and based on Plaintiff's view that it was "on target in 2015 to do business of between $1.7 million and $2 million with Quten").) As for the Advance Frozen Foods account, it is apparent that orders had been placed with Defendant before Plaintiff learned of the circumvention, given the lead time that the customer required for its orders. (*Id.* ¶ 21.) By the time Plaintiff realized what had occurred, enough orders had been placed to provide Advance with inventory for nearly four months, representing a loss to Plaintiff of more than $100,000. (*Id.* ¶ 22.)

Plaintiff additionally alleges that Defendant provided these customers with "inferior products" and, despite "promis[ing] [ ] that any materials that were substandard or defective would be replaced," refused to replace them. (*Id.* ¶ 23.) This has put Plaintiff at a severe disadvantage because these customers will no longer place orders through Plaintiff with any vendors based in China, where pricing is "consider-ably more competitive" as compared to the United States. (*Id.*)

Plaintiff filed its initial Complaint ·on October 5, 2015 (ECF No. 1), and the filed the Amended Complaint on February 26, 2016. (ECF No. 15.) The Amended Complaint asserts breach of contract, tortious interference with business relations and prospective economic advantage, unjust enrichment, and conversion. (*Id.* at 6, 8–9.) Defendant filed its motion to dismiss on May 5, 2016. (ECF No. 16.)

## DISCUSSION

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir. 2009). To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570, 127 S.Ct. 1955.

In the present case, Plaintiff alleges four causes of action: (1) breach of contract; (2) tortious interference with business relations and prospective economic advantage; (3) unjust enrichment; and (4) conversion. The Court will address each claim in turn.

## A. Breach of Contract

The basis of Plaintiff's contract claim is Defendants putative breach of an agreement "whereby the Plaintiff would be paid a commission for any customers it placed with the Defendant to process orders through China." (Am. Compl. ¶ 1, 8.) Plaintiff asserts "Defendant would pay Plaintiff $100,000.00 annual draw against any future commissions earned for any and all business that [Plaintiff] placed with the Defendant" and Plaintiff's "commissions ranged" between twenty and forty-five percent. (Am. Compl. ¶¶ 26–27.) But rather than pay Plaintiff "the full commission that it is entitled to," Defendant "breached the agreement" by selling "products directly to Plaintiff's customers" and "circumventing Plaintiff and cutting it out of the equation." (Am. Compl. ¶ 1.) Defendant moves to dismiss the claim on the grounds that (1) it performed under the Agreement, through April 2015 and (2) Complaint fails to allege that it was "probated from dealing directly with customers ... or entitled Plaintiff to 'residual' commissions for sales made after," the agreement terminated. (Mem. Law in Supp. of D.'s Mot. to Dismiss ("Def.'s Mem.") at 1–2, ECF No. 18.)

To make out a claim for breach of contract under New York law,[2] a plaintiff must prove four elements: (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach. *See, e.g., Johnson v.*

*Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).

For a contract to exist, there must be "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. and Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 693 N.Y.S.2d 857, 715 N.E.2d 1050, 1053 (1999). "Generally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.* Moreover, the plaintiff "must identify what provisions of the contract were breached as a result of the acts at issue." *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14-CV-8467 (JMF), 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016) (internal citations omitted).

Applying those principles here, there is no basis to dismiss. Notably, neither party has included or attached a copy of the Agreement in the pleadings. Defendant might well be right that it does not owe— because the party never agreed—Plaintiff was entitled to "residual" commissions for sales made after the agreement ended in April 2015. (Def.'s Mem. at 4.) However, this does not address whether Defendant still owes Plaintiff commissions for sales made during the time period governed by the contract. Similarly, in absence of a post-term provision, Plaintiff may be unable to pursue damages for Defendant's conduct after April 2015. But both of these scenarios raise factual disputes that are not appropriate to the Court's inquiry at this stage. Given that the Court must accept the factual allegations set forth in the

---

**2.** Which the parties here agree is controlling. *See, e.g., Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011)

("[W]here the parties agree that New York law controls, this is sufficient to establish choice of law.").

complaint as true and draw all reasonable inferences in favor of the Plaintiff, it finds the Complaint provides sufficient allegations precluding dismissal.

Plaintiff has alleged sufficient facts to support it performed the alleged contract by providing details about the work, such as what the work was, who performed, or when it was performed relative to terminating the relationship. According to the Complaint, "Plaintiff performed pursuant to the Agreement and placed its customers with Defendant," (Am. Compl. ¶ 28), by "develop[ing] the relationships [with] customers, and these customers placed their business with Defendants through the Plaintiff. . . ." (*Id.* ¶ 19) Ultimately, Plaintiff initiated and developed relationships from which Defendant benefitted. (*Id.* ¶ 15.) "As a result of the efforts, the customers . . . agreed to place their order for packaging through the [Defendant].[3] In fact, Plaintiff admits that both parties performed under the Agreement, through April 2015, (*Id.* ¶ 17), in alleging that the parties "continued to do business for several months pursuant to the Agreement," until "the relationship between Plaintiff and Defendant terminated." (*Id.*)

Regarding the third element of the claim, The Amended Complaint sufficiently alleges that Defendant violated the Agreement "during their relationship." (Am. Compl. ¶ 18.) Plaintiff alleges that "without [its] knowledge, [Defendant's President] went to each of the Plaintiff's customers, and acting on behalf of the Defendant, advised them that the Defendant would be replacing the Plaintiff as their representative and that they should no longer do business with the Plaintiff." (*Id.*) Defendant breached the agreement by interfering with the relationships Plaintiff had established and maintained these relationships and denying Plaintiff its agreed-to commission (19 20). And this interference caused "irreparable damage to the Plaintiff," resulting in, *inter alia,* "a loss of income to the Plaintiff of more than $100,000." (Am. Compl. ¶¶ 22–23.)

In short, at this stage of the case, the Court finds that Plaintiff has sufficiently pled the elements for breach of contract, and thereby denies Defendant's motion to dismiss regarding this claim.

**B. Tortious Interference with Business Relations and Prospective Economic Advantage**

Next, the Court turns to Plaintiff's tortious interference claim with business relations claim. That claim is predicated on Defendants' alleged interference with Plaintiff's "business relationships with third parties "including, but not limited to, Quenten Research Group, the Fountainhead Group, and Advanced Frozen Foods." (Am. Compl. ¶ 12; 29; Pl.'s Mem. Opp'n, 7–8). According to the Amended Complaint, "during their relationship, and after [it] terminated" "without the Plaintiff's knowledge, [Defendant's President] went to each of the Plaintiff's customers, and acting on behalf of the Defendant, advised them that the Defendant would be replacing the Plaintiff as their representative and they should no longer do business with the Plaintiff." (Am. Compl. ¶ 33.) Significantly, Plaintiff alleges that Defendants interfered with a prospective economic advantage when it caused irreparable damage to its reputation when it sent its customers "inferior products and refused to replace them." (*Id.* ¶ 23) *See, e.g., Strapex Corp. v.*

---

**3.** The Court notes that Plaintiff's Complaint states "Plaintiff" rather than "Defendant." It presumes this is an error and has substituted Defendant given that the preceding and following paragraphs allege that customers "placed their packaging orders with Defendant." (Am. Compl. ¶ 16.)

*Metaverpa N.V.*, 607 F.Supp. 1047, 1050 (S.D.N.Y. 1985) ("Interference with a plaintiff's business relations with a third party can be found if the plaintiff had a reasonable expectancy of a contract with the third party, which can result from mere negotiations." (internal quotation marks omitted)). Accordingly, to establish its claim, Plaintiff must demonstrate that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir. 2004) (internal quotation marks omitted); *accord Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).

 "As an initial matter … tortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action. *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 Fed.Appx. 102, 105–06 (2d Cir. 2012) (citing *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)) (noting that tortious interference with business relations is sometimes referred to "by an alternative name, 'tortious interference with prospective economic advantage'"). To state a claim for tortious interference with business relations, a plaintiff must adequately allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Id.*

As discussed above, Plaintiff has sufficiently alleged its rights and obligations under the Agreement with Defendants and how Defendant breached the agreement. In addition, the Complaint contains specific allegations regarding the loss to Plaintiff's business during and after the Defendant injured its relationships with third-parties. By way of example, Plaintiff claims that in misleading a prior customer, Advanced Frozen Foods, to place orders only with Defendant, Plaintiff suffered a loss "of more than $100,000" in revenue. (Am. Compl. ¶ 21.)

 Nevertheless, Plaintiff's claim for tortious interference may be defective in failing to plead that Defendant used "wrongful means" to induce customers to "no longer do business with the Plaintiff." As the New York Court of Appeals observed in *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004), the third element—which requires that a defendant act with a wrongful purpose or utilize wrongful means—distinguishes tortious interference with business relations from tortious interference with contract. *Id.* at 189–90, 785 N.Y.S.2d 359, 818 N.E.2d 1100. In the case of tortious interference with contract, a plaintiff may recover if she can demonstrate that the "defendant's deliberate interference result[ed] in a breach of [the] contract." *Id.* at 189, 785 N.Y.S.2d 359, 818 N.E.2d 1100. In the case of tortious interference with business relations, however, the "plaintiff must show more culpable conduct on the part of the defendant." *Id.* at 190, 785 N.Y.S.2d 359, 818 N.E.2d 1100. "[A]s a general rule," in order to satisfy the third element of tortious interference with business relations, "the defendant's conduct must amount to a crime or an independent tort." *Id.* "Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to

create liability for interference with prospective contracts or other nonbinding economic relations." *Id.* There is, however, at least one exception to the general rule that the defendant's conduct must be criminal or independently tortious. If the plaintiff can demonstrate that the "defendant engage[d] in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs,'" then the wrongful means element is satisfied. *Id.* While the *Carvel* court noted the possibility that other exceptions existed, it did not recognize any additional exceptions:

> [W]e do not decide today[ ] whether any other exception to the general rule exists—whether there can ever be other instances of conduct which, though not a crime or tort in itself, was so "culpable" ... that it could be the basis for a claim of tortious interference with economic relations. That is a question we leave for another day, because no such egregious conduct was shown here.

*Id.* at 190–91, 785 N.Y.S.2d 359, 818 N.E.2d 1100.

■ Plaintiff alleges that Defendant interfered with its business relationships with third-parties by intentionally misrepresenting it would be replacing the Plaintiff as their representative. Plaintiff, however, does not allege any facts to support their contention that Defendant believed that the tortious conduct was impermissible under the Agreement. Although Plaintiff alleges that Defendant "intentionally interfered with those relationships" and "acted with the sole purpose of harming Plaintiff," this Court, even on a motion to dismiss, is not required to accept conclusory allegations—particularly allegations such as those asserted here, characterizing or attributing a state of mind of another person. *See Wolff v. Rare Medium, Inc.*, 171 F.Supp.2d 354, 360 (S.D.N.Y. 2001) (citing *R.C.M. Executive Gallery Corp. v.*

*Rols Capital Co.*, No. 93-CV-8571, 1997 WL 27059, *8 (S.D.N.Y. Jan. 23, 1997) (internal citations omitted)). As a result, the Complaint fails to plead that Defendant used wrongful means to interfere with Plaintiff's agreements or business relationships with third parties.

Accordingly, Defendant's motion to dismiss Plaintiff's tortious interference with prospective business advantage is granted without prejudice.

## C. Unjust Enrichment

■ Defendant seeks to dismiss Plaintiff's claim for unjust enrichment because it is duplicative of his other causes of action, specifically breach of contract. (Def.'s Mem. at 5.) In addition, the Complaint fails to allege facts that Defendant was unjustly enriched "by selling directly to the customers introduced by Plaintiff." (*Id.* at 5.) Plaintiff argues that New York law permits a plaintiff to plead unjust enrichment as an independent or alternative theory of recovery, and the claim should therefore not be dismissed. (Pl.'s Mem. Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 21.)

■ To establish unjust enrichment, the plaintiff must demonstrate: "'(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Mahoney v. Endo Health Sols., Inc.,* No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).

■ However, under New York law, an unjust enrichment claim "'is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Weisblum v. Prophase Labs,*

*Inc.*, 88 F.Supp.3d 283, 296 (S.D.N.Y. 2015) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (N.Y. 2012)). If the plaintiff is simply restating a contract or tort claim, then unjust enrichment is not available. See *Mahoney*, 2016 WL 3951185, at *11 (" '[U]njust enrichment is not a catchall cause of action' and it 'is not available where it simply duplicates, or replaces, a conventional contract or tort claim.' "); *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 290 (S.D.N.Y. 2014) ("Yet, an unjust enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.' ").

Plaintiff argues that New York law permits a plaintiff to plead unjust enrichment as an independent or alternative theory of recovery, citing *AIM Int 'l Trading, L.L.C. v. Valcucine S.P.A.*, No. 02-CV-1363 (PKL), 2003 WL 21203503, at *10 (S.D.N.Y. May 22, 2003). *AIM Int'l* merely states that the unjust enrichment cause of action was properly pleaded in the alternative and cites to one case from the Southern District of New York. *Id.* at *7. In that case, *G–I Holdings*, Judge Sweet noted that in the event that a tortious interference claim would fail because the underlying contract was unenforceable, an alternate claim of tortious interference claim would become viable. *G–I Holdings, Inc. v. Baron & Budd*, 238 F.Supp.2d 521, 535–36 (S.D.N.Y. Jul. 17,2002); *see also Buonasera v. Honest Co., Inc.*, 208 F.Supp.3d 555, 567–68 (S.D.N.Y. Sept. 23, 2016) (quoting *IIG Capital LLC v. Archipelago, LLC*, 36 A.D.3d 401, 829 N.Y.S.2d 10 (1st Dep't 2007) ("[W] here there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, plaintiff may proceed upon a theory of quantum meruit and will not be required to elect his or her remedies.")) To the extent Plaintiff seeks to assert a claim for unjust enrichment as an alternate theo-ry of recovery and not duplicative of remaining claims, the motion to dismiss is denied.

### D. Conversion

 Plaintiff's conversion claim is easily addressed. Conversion is inapplicable when plaintiff seeks to recover damages sought for breach of contract. *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F.Supp.2d 191, 202 (S.D.N.Y. 2006). Here, Plaintiff is seeking "all the commissions due to it" pursuant to the "agreement whereby Defendant would pay Plaintiff $100,000.00 annual draw against any future commissions earned for any and all business that [Plaintiff] brought to Defendant." (Am. Compl. ¶ 48.) Therefore, Defendant's motion to dismiss is granted on that basis.

### CONCLUSION

For the reasons stated above Defendant's motion to dismiss is GRANTED in part and DENIED in part. More specifically, the breach of contract and unjust enrichment claims survive. By contrast, the tortious interference with business relations and prospective economic advantage is dismissed without prejudice. The conversion claim is dismissed.

As to claims dismissed without prejudice, Plaintiff is granted leave to file an amended complaint in accordance with this Opinion on or before May 1, 2017. The Defendants shall answer or seek a premotion conference on any potential motion to dismiss by June 1, 2017. The parties are directed to appear for an initial pre-trial conference on **June 16, 2017,** at **11:00 a.m.** at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York, 10601. Parties are directed to bring a completed case management plan to the conference.

The Clerk of Court is respectfully requested to terminate the motion at ECF No 16.

SO ORDERED.

