GOLDEN ARCHER INVESTMENTS,
LLC, Plaintiff,

v.

SKYNET FINANCIAL SYSTEMS,
Defendant.

No. 11 Civ. 3673(RJS).

United States District Court,
S.D. New York.

Dec. 12, 2012.

Kevin Kerveng Tung, Kun Zhao of Kevin Kerveng Tung, P.C., Flushing, NY, for Plaintiff and Counter–Claim Defendants.

James Charles Fitzpatrick, Hughes Hubbard & Reed LLP, New York, NY, Alan E. Littmann, Jennifer Greenblatt, Goldman Ismail Tomaselli Brennan & Baum, LLP, Chicago, IL, Defendant and Counter–Claim Plaintiff.

MEMORANDUM AND ORDER.

RICHARD J. SULLIVAN, District Judge.

Plaintiff Golden Archer Investments, LLC ("Plaintiff") brings this diversity action against Defendant Skynet Financial Systems, LLC ("Defendant") stemming from Defendant's alleged breach of an agreement to develop financial trading software. Defendant asserted counterclaims against Plaintiff and Plaintiff's principal, David Rucker. Before the Court is Defendant's motion for summary judgment and Plaintiff and Rucker's cross-motion for summary judgment on Defendant's counterclaim for violation of the Illinois eavesdropping statute, Ill.Rev.Stat. ch. 38 § 14–

2. For the following reasons, the Court grants Defendant's motion, and denies Plaintiff and Rucker's cross-motion.

I. BACKGROUND

A. Facts[1]

Plaintiff hired Defendant, a company that provides computer programming services to financial firms, to build a "market-making" program. (Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1; Decl. of Jennifer Greenblatt, dated July 31, 2012, Doc. No. 47 ("Greenblatt Decl."), Ex. 3.) The parties entered a written agreement (the "Agreement"), which states in its entirety:

To whom it may concern,

Golden Archer Investments hereby engages Skynet Financial as Independent Contractor for the purpose of developing a Java based market-making program. All developed programs will be the sole property of Golden Archer Investments LLC. As agreed, Skynet Financial will be paid $125 per hour of development time. Prior to actual work time hours must be agreed between Golden Archer and Skynet Financial, Payment will be remitted once a week or after $5000 of accumulated hours. The Agreement may not be amended, changed, or supplemented in any way except by written Agreement signed by both parties.

(Greenblatt Decl. Ex. 3.) The Agreement is a valid contract between Plaintiff and Defendant and is the only written, signed agreement between the parties. (Def. 56.1 ¶¶ 3–4; Pl. 56.1 ¶¶ 3–4.) The parties executed this agreement on September 29 and 30, 2010 (Greenblatt Decl. Ex. 3), and Defendant proceeded to write thousands of

1. The following facts are taken from the pleadings, the Local Civil Rule 56.1 Statements ("Def. 56.1 ——" or "Pl. 56.1 ——"), the affidavits submitted in connection with the instant motions, and the exhibits attached thereto. The facts are undisputed unless otherwise noted. Where one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact.

lines of customized software code for Plaintiff between October 2010 and the end of March 2011 (Def. 56.1 ¶¶ 16–17; Pl. 56.1 ¶ 16). The parties never agreed in writing to amend, supplement, or change the Agreement. (Def. 56.1 ¶ 20.)

On April 7, 2011, Plaintiff's principal, David Rucker, emailed Defendant and stated, in part, "We would like to make a couple of changes before proceeding further. . . . We need a contract with deliverables and a fixed cost for the completion of the project—we simply cannot have an open ended project." (Greenblatt Decl. Ex. 6 at SKY002306–07; Def. 56.1 ¶ 24.) On April 8, 2011, Plaintiff specifically instructed Defendant to cease all work on the project until they had a new contract in place. (Greenblatt Decl. Ex. 6 at SKY002325.) Defendant complied and did not do any additional work on the project. (Def. 56.1 ¶ 27.)

Then, on April 11, 2011, Plaintiff asked Defendant to resume work pursuant to a new contract, which included (1) agreed-upon deliverables, (2) specific deadlines for the deliverables, and (3) a requirement that all work be performed by Defendant's co-owners, James Silverstein and Paul Schneider. (Id. ¶¶ 29–30.) The proposed agreement also included a ten-month deadline for completing all work on the project. (Id. ¶ 31.) Defendant refused to agree to these terms. (Id. ¶ 32.) Thereafter, Defendant demanded payment for the outstanding balance for services provided to Plaintiff, which totaled $15,500. (Def. 56.1 ¶¶ 53, 55–56; Pl. 56.1 ¶¶ 53, 55–56.) Plaintiff has refused to make any such payment. (Def. 56.1 ¶ 55; Pl. 56.1 ¶ 55.)

After the parties' relationship deteriorated, Defendant discovered that, between October 2010 and April 2011, Rucker had recorded telephone conversations with Silverstein regarding the project. (Def. 56.1 ¶ 59.) Rucker made and recorded these calls in New York while Silverstein was in Illinois. (Id. ¶ 60.) During the calls, Silverstein was unaware that the calls were being recorded and did not consent to the calls being recorded. (Id. ¶¶ 61–62.)

## B. Procedural History

Plaintiff commenced this action by filing a complaint in New York State Supreme Court, New York County, on May 2, 2011. Defendant removed the case to this Court on June 1, 2011. By Order dated December 30, 2011, the Court denied Defendant's motion to dismiss for lack of personal jurisdiction. *Golden Archer Invs., LLC v. Skynet Financial Sys.*, No. 11 Civ. 3673(RJS), 2012 WL 123989, at *6 (S.D.N.Y. Jan. 3, 2012). However, the Court granted Defendant's motion to dismiss Plaintiffs claim for fraudulent inducement on the ground that it was not pled with the specificity required by Federal Rule of Civil Procedure 9(b).[2] *Id.* at *8. Plaintiff did not seek leave to file an amended complaint following the Court's decision. On January 17, 2012, Defendant asserted a counterclaim for the balance of the unpaid invoices and a counterclaim against Plaintiff and Rucker personally for violating the Illinois eavesdropping statute.

Following the close of fact discovery, and in accordance with the briefing schedule set by the Court, Defendant filed the instant motion for summary judgment on July 31, 2012, which renewed its earlier argument that the Court lacks personal jurisdiction over Defendant. On August 21, 2012, Plaintiff and Rucker, without leave of the Court and in violation of Rule 2.A. of the Court's Individual Practices,

---

**2.** Because this was the only claim brought against Silverstein and Schneider, the Court did not reach their argument that the Court lacked personal jurisdiction over them. *Golden Archer Invs.*, 2012 WL 123989, at *6 n. 5.

filed a cross-motion for summary judgment, together with Plaintiff's opposition to Defendant's motion. Defendant filed a reply on August 30, 2012. The Court heard oral argument on October 9, 2012.

## II. PERSONAL JURISDICTION

Initially, Defendant renews its argument that the action should be dismissed because the Court lacks personal jurisdiction over it. (Def. Br. 24–25.) However, Defendant has offered no new evidence in support of this argument and, for the reasons detailed in the Court's Order of December 30, 2011, the Court finds that Defendant's purposeful activities directed to New York confer jurisdiction under New York's long-arm statute and that the exercise of personal jurisdiction over Defendant is consistent with due process. *See Golden Archer Invs.*, 2012 WL 123989, at *6. Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is denied.

## III. SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proving that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a *genuine issue for trial*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (citations and internal quotation marks omitted).

■ In ruling on a motion for summary judgment, the Court must resolve any ambiguity in favor of the nonmoving party. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir.2004). The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). As a result, summary judgment will not issue where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. However, "a complete failure of proof concerning an essential element of the nonmoving party's case" renders summary judgment proper. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## IV. PLAINTIFF'S BREACH OF CONTRACT CLAIM

Defendant asserts that it is entitled to summary judgment on Plaintiff's breach of contract claim because the terms that Defendant is accused of breaching were not part of the Agreement. Specifically, although Plaintiff alleges that Defendant breached the contract by (1) not completing the software development project within two months, (2) failing to deliver software with the required functionalities, and (3) having developers other than Silverstein and Schneider work on the project (Am. Compl. ¶¶ 75–77), Defendant asserts that the parties only agreed to an hourly development contract that did not include any of these terms. (Def. Br. 1.)

■ "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank N.A.*, 632 F.3d 793, 799

(2d Cir.2011). In determining a party's obligations under a contract, "the initial interpretation of a contract is a matter of law for the court to decide." *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir.1996) (citation omitted). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir.1998).

■■■ "New York has long adhered to the sound rule in the construction of contracts that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language." *Soroof Trading Dev. Co., Ltd., v. GE Fuel Cell Sys., LLC,* 842 F.Supp.2d 502, 510 (S.D.N.Y. Jan.24, 2012) (quoting *R/S Assoc. v. N.Y. Job Dev. Auth.,* 98 N.Y.2d 29, 32, 744 N.Y.S.2d 358, 771 N.E.2d 240 (2002)) (internal quotation marks omitted). "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *R/S Assoc.,* 98 N.Y.2d at 32, 744 N.Y.S.2d 358, 771 N.E.2d 240 (citation and internal quotation marks omitted). Thus, "parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *Id.* at 33, 744 N.Y.S.2d 358, 771 N.E.2d 240 (citation and internal quotation marks omitted). Of course, if a contract is not fully integrated, the parol evidence rule does not apply and courts may consider extrinsic evidence of separate oral agreements to determine the full nature of the parties' agreements. *See Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 295 (2d Cir.1999). However, even if a contract is not fully integrated, where it requires that any modifications or amendments be made in a signed writing, the contract may not be modified orally. *See*

N.Y. Gen. Oblig. Law § 15–301; *Rose v. Spa Realty Assocs.,* 42 N.Y.2d 338, 343, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (1977).

In this case, the Agreement states that it "may not be amended, changed, or supplemented in any way except by written Agreement signed by both parties." (Greenblatt Decl. at Ex. 3.) Therefore, the Agreement can only be modified in writing.

With this background, the Court proceeds to consider whether the Agreement (1) obligated Defendant to complete software development within two months, (2) was a deliverable contract, or (3) provided that development would be done only by Silverstein and Schneider.

### A. Whether the Agreement Contains a Two–Month Deadline

Plaintiff argues that the agreement between the parties obligated Defendant to deliver a fully completed software program within two months, (Opp'n 10–11.) However, the Agreement contains no such term. Indeed, the Agreement contains nothing suggesting a deadline of any sort within which Defendant was required to complete the project (Greenblatt Decl. Ex. 3), and other courts have previously held that, in general, when parties intend to impose a deadline within which to complete work, that is a key term that should be included in an agreement, *see, e.g., Soroof Trading Dev.,* 842 F.Supp.2d at 512.

Although Plaintiff contends that the Agreement does not represent all relevant terms of the contract between the parties (*see, e.g.,* Pl. 56.1 ¶ 1), Plaintiff does not identify any evidence to suggest that the parties agreed to a two-month deadline within which Defendants would complete the project. Indeed, Plaintiff admits that the parties never agreed in writing that Defendant had to complete work on the project within two months. (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.) Thus, Plaintiff relies solely on

Rucker's contention that "SkyNet promised that the software development project would be finished within approximately two months." (Decl. of David Rucker, dated Aug. 21, 2012, Doc. No. 54 ("Rucker Decl."), ¶ 9; *see id.* ¶ 18 ("SkyNet agreed to a deliverable software program within approximately two months.").)

■ However, it should be obvious that the alleged promises to complete development in two months could not be binding if they were made *after* the parties signed the Agreement, because the promises were not reduced to writing and signed by the parties, as required by the agreement. *See* N.Y. Gen. Oblig. Law § 15–301; *Rose,* 42 N.Y.2d at 343, 397 N.Y.S.2d 922, 366 N.E.2d 1279. Alternatively, while the Court could consider parol evidence regarding pre-execution promises if it determined that the Agreement was not fully integrated, *see Starter Corp.,* 170 F.3d at 295, Plaintiff does not assert, or provide any evidence, that Defendant made any promises regarding how long the software development would take *before* the parties entered the Agreement. (Rucker Decl. ¶¶ 9, 18.) Therefore, Plaintiff has failed to establish that Defendant agreed to complete development of the project within two months.

■ Similarly, nothing in the e-mail correspondence cited by Plaintiff indicates that the parties had a meeting of the minds with respect to a completion date. On October 25, 2010—almost a month after the Agreement was executed—Rucker complained in an e-mail that Plaintiff could not afford to continue paying Defendant through the end of December for sixty hours per week of development time. (Decl. of Kevin K. Tung, dated Aug. 21, 2012, Doc. No. 53 ("Tung Decl."), Ex. 2 at 1.) Although this e-mail suggests that Plaintiff hoped that software development would be completed by the end of December, it does not establish that Defendant bound itself to complete the project by the end of December. In fact, Plaintiff's assertion that the contract imposed a two-month deadline is contradicted by an e-mail Rucker sent on November 8, 2010 that directs Defendant to proceed "full speed ahead with the software development" and to "do as much work as possible to get it running by the *end* of December." (Greenblatt Decl. Ex. 6 at SKY002325 (emphasis added).) Indeed, Plaintiff even asserts in its opposition brief that "[t]he estimated time during the negotiations for the completion of the [project] would not exceed past December 2010." (Opp'n 11.) However, because the Agreement was fully executed as of September 30, 2010 (Greenblatt Decl. Ex. 3), Defendant would have had to complete the project *before* December 2010 if the Agreement actually required Defendant to complete the project in two months. Thus, Rucker's e-mail and the statements in Plaintiffs brief are inconsistent with Plaintiffs claim that Defendant was obligated to finish the project within two months, which would have been by the *beginning* of December.

Moreover, the parties' course of dealing and Plaintiffs revised proposed contract also undermine Plaintiffs claim that Defendant was obligated to complete development of the project by December. In April 2011—five months after the deadline by which Plaintiff now claims development was to be completed—Plaintiff proposed a new contract, which provided that Plaintiff would pay Defendant a fixed sum in exchange for completion of a software program with certain defined functionality. (Greenblatt Decl. Ex. 11 § 2.01(a).) The proposed agreement also states that the project would take approximately five months to complete and that Defendant's compensation would be reduced if it was not completed in ten months. (*Id.*

§ 20.1(b)-(c).) Although Defendant did not ultimately agree to the terms of this proposal, the deadlines Plaintiff proposed are inconsistent with Plaintiffs argument that the Agreement imposed a two-month deadline, which would have effectively required Defendant to complete development ten months earlier than the deadline in the proposed contract that Defendant rejected.

Accordingly, because Plaintiff has not identified any evidence from which a reasonable trier of fact could conclude that Defendant contracted to provide a complete software program within two months, the Court finds that Defendant is not liable for breach of contract for failing to do so.

### B. Whether the Agreement Is a Deliverable Contract

Plaintiff further contends that the Agreement obligated Defendant to provide a "deliverable" product and was not merely a contract for hourly work. (Opp'n 8–10.) However, the Agreement clearly provides that it is an hourly contract and makes no mention of any required deliverables. Although the parties contemplated that Defendant would work to produce a fully functioning software program, the Agreement provides only that "[Defendant] will be paid $125 per hour of development time," and sets forth no cap on compensation or description of what Defendants were to construct. (Greenblatt Decl. Ex. 3.) In contrast to an agreement that obligates a party to produce certain results at a fixed price, the Agreement in this case merely set forth the hourly rate that Defendant would charge for developing the software platform. *See SAA–A, Inc. v. Morgan Stanley Dean Witter & Co.*, 281 A.D.2d 201, 721 N.Y.S.2d 640, 641

(2001) (explaining that the contract only required payment for services used on a per diem basis).

Plaintiff attempts to avoid the clear language of the Agreement by relying on Rucker's unsupported assertion that "[Defendant] agreed to a deliverable software program." (Rucker Decl. ¶ 18.) However, this contention directly contradicts the terms of the parties' written agreement. Notably, as with Defendant's alleged promise to complete development in two months, Plaintiff does not state whether Defendant made this promise before the parties executed the Agreement, and there is no allegation that this promise was ever reduced to writing.

■ Moreover, the parties' correspondence post-execution of the Agreement regarding the details of the project and the desired functionality of the software does not establish that the parties agreed to a deliverables contract. At most, this correspondence set forth design parameters for Defendant to follow, but does not establish that the contract morphed into a deliverables agreement whereby Defendant would provide a program meeting those specifications by a fixed time.[3] (Opp'n 9.) Accordingly, the Court finds that Plaintiff has failed to identify any evidence that creates a material question of fact as to whether the Agreement required Defendant to deliver a fully functioning software program within two months.

Furthermore, as with the deadline for completing the project, the new contract proposed by Rucker in April 2011 is inconsistent with Plaintiff's argument that the original Agreement contained a deliverables requirement. When proposing the

---

**3.** Remarkably, Plaintiff has not provided the Court with the parties' correspondence regarding the functionality of the software. Instead, Plaintiff cites to representations in Rucker's Declaration and asserts that it "is willing to provide this [information] to the Court if necessary." (Opp'n at 9.) Obviously, any evidence that Plaintiff wanted the Court to consider should have been submitted in conjunction with this motion.

new contract, Rucker explained that "[w]e *need* a contract with deliverables and a fixed cost for the completion of the project—we simply cannot have an open ended project." (Greenblatt Decl. Ex. 11 at SKY002307 (emphasis added).) After Defendant rejected this offer, Rucker protested, "[W]hy are you unwilling to have a contract with deliverables?" (*Id.* at SKY001703.) Consistent with the plain language of the Agreement, these statements appear to recognize that the Agreement was *not* a deliverables contract, further demonstrating that Defendants could not have breached this term.

### C. Whether the Agreement Required Silverstein and Schneider to Do All Work

Plaintiff next contends that the Agreement required that all work be done by Defendant's co-owners, Silverstein and Schneider. (Opp'n 12.) Once again, the written agreement makes no mention of who will be working on the project. Furthermore, the Agreement is between Plaintiff and Defendant only; neither Silverstein nor Schneider is a party to the Agreement. (Greenblatt Decl. Ex. 3.)

In support of Plaintiff's assertion that the Agreement nevertheless required that all work be done by Silverstein and Schneider, Plaintiff relies primarily on Rucker's unsupported assertions that Defendant promised that all work would be done by them. (Rucker Decl. ¶¶ 9, 18.) However, these assertions cannot be used to add additional requirements to the Agreement, which imposes no limitation on which individuals associated with Defendant may work on the project. Moreover, like the allegations regarding when the project would be completed, Plaintiff does not state that these promises were made before the parties executed the Agreement and does not contend that they were reduced to writing. *See Starter Corp.*, 170

F.3d at 295; *Rose,* 42 N.Y.2d at 343, 397 N.Y.S.2d 922, 366 N.E.2d 1279. Therefore, the Court finds that these allegations do not raise a material question of fact as to whether Defendant promised, as a term of the parties' contract, that all work would be performed by Silverstein and Schneider.

■ Similarly, Plaintiffs reliance on a photograph of a whiteboard that depicts the tasks remaining to be completed and whether "Jim" (Silverstein) or "Paul" (Schneider) is responsible (Tung Decl. Ex, 5), does not raise a question of fact as to whether Defendant agreed all work would be done exclusively by them. Although this photograph does show that tasks were to be divided between Silverstein and Schneider, even drawing all inferences in favor of Plaintiff, it does not establish, or even suggest, that Defendant agreed that *only* Silverstein and Schneider would be responsible for product development. *Cf. Leibowitz v. Cornell Univ.,* 584 F.3d 487, 507 (2d Cir.2009) (explaining that New York law requires that the parties intend to be bound in order to create a valid contract); *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.,* 93 N.Y.2d 584, 589, 693 N.Y.S.2d 857, 715 N.E.2d 1050 (1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.").

Accordingly, because Plaintiff has offered no evidence that Defendant intended to be bound by a requirement that all work would be done by Silverstein and Schneider, Plaintiff has not established a breach of the Agreement based on the work done by other programmers associated with Defendant.

\* \* \*

Put simply, Plaintiff has failed to identify any evidence to show that the Agreement (1) obligated Defendant to complete software development within two months, (2) was a deliverables contract, or (3) provided that Silverstein and Schneider would do all the development work. As a result, Plaintiff has not identified any provision of the Agreement that Defendant breached, and Defendant is entitled to summary judgment.

## V. PLAINTIFF'S CLAIMS FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AND UNJUST ENRICHMENT

Defendant also argues that it is entitled to summary judgment on Plaintiff's claims for breach of the implied duty of good faith and fair dealing and unjust enrichment because they are improperly duplicative of Plaintiffs claim for breach of contract. (Def. Br. 18.)

■■■ New York law implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir.2006) (citation and internal quotation marks omitted). However, the covenant of good faith and fair dealing "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir.2005) (citation and internal quotation marks omitted); *see Fellows v. CitiMortgage, Inc.*, 710 F.Supp.2d 385, 407 (S.D.N.Y.2010). Additionally, New York law does not permit "a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris*

*v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir.2002).

■■■ Plaintiff explains that its claim for breach of the implied covenant of good faith and fair dealing is based on Defendant's use of version control modules, which cause certain portions of the software Defendant installed to expire within a finite period of time. (Opp'n 15; Rucker Decl. ¶ 25.) Additionally, Plaintiff asserts that Defendant's failure to provide documentation for the program, which has prevented Plaintiff from hiring another programmer to complete development, also breached the covenant of good faith and fair dealing. (Opp'n 15; Rucker Decl. ¶ 26.) However, there is nothing in the agreement that required Defendants to write the software in a particular format or to provide detailed documentation for future programmers, nor has Plaintiff identified any authority to suggest that such measures are necessary "to receive the fruits of the contract." *Thyroff*, 460 F.3d at 407. Accordingly, the Court finds that these allegations are improperly duplicative of Plaintiff's claim for breach of contract, or seek to impose duties upon Defendant beyond those imposed by the Agreement. Therefore, the Court grants summary judgment in favor of Defendant on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

■■■ Similarly, the New York Court of Appeals has held that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987); *accord Golub Assoc., Inc. v. Lincolnshire Mgmt., Inc.*, 1 A.D.3d 237, 767 N.Y.S.2d

571, 572 (2003) ("Nor is a claim predicated on unjust enrichment cognizable where the parties' rights and obligations are governed by a valid and enforceable contract."). Although Plaintiff argues that this rule does not prevent recovery for services and benefits conferred beyond the express contract, *see Hotel Aquarius, B.V. v. PRT Corp.*, No. 92 Civ. 4498(MBM), 1992 WL 391264, at *5 (S.D.N.Y. Dec. 22, 1992), Plaintiff identifies nothing that it provided to Defendant that was beyond the Agreement. Accordingly, Defendant's are entitled to summary judgment on Plaintiff's claim for unjust enrichment.

## VI. Defendant's Breach of Contract Counterclaim

Defendant also moves for summary judgment on its counterclaim that Plaintiff breached the Agreement by failing to pay for $15,500 worth of software programming that was invoiced on March 29, 2011, April 3, 2011, and April 9, 2011. (Def. Br. 19; Def. 56.1 ¶¶ 55–56; Pl. 56.1 ¶¶ 55–56.) Plaintiff employed Defendant from October 2010 through the end of March 2011 for about forty-two hours per week. (Def. 56.1 ¶ 17; Pl. 56.1 ¶ 17.) Indeed, the undisputed evidence indicates that Defendant had been working on the project for nearly six months at the time it performed the disputed work, that Plaintiff had paid all prior invoices, and that it was not until April 8, 2011 that Plaintiff wrote to Defendant and directed it to cease all work on the project. (Def. 56.1 ¶¶ 25–28, 52–53.)

**4.** Plaintiff contends that "the time [Defendant] spent developing software and the work reflected from the invoices are in factual dispute." (Pl. 56.1 ¶ 56.) However, Plaintiff cites no evidence to support this contention. Instead, Plaintiff cites to (1) the Agreement, (2) the First Amended Complaint, (3) Rucker's statement regarding execution of the Agreement and what the parties agreed to, and (4) an October 25, 2010 email from Rucker to Defendant regarding his involvement with the

In opposition, Plaintiff relies on the provision in the Agreement that requires that "[p]rior to actual work time hours must be agreed," and asserts that it never gave Defendant permission to perform this work. (Opp'n 13; Greenblatt Decl. Ex. 3.) However, Plaintiff offers no evidence to even suggest that it did not give Defendant permission to perform this work or that Defendant did not perform the work reflected on the invoices. (Pl. 56.1 ¶ 56.)[4]

Furthermore, although Defendant did not provide a complete software platform, Plaintiff has not cited to any evidence to show that the software Defendant created during this time was non-functional or defective, and Plaintiff does not articulate any other reason that might justify its refusal to pay these invoices. Accordingly, because Plaintiff has not identified any material question of fact as to whether Defendant performed this work without authorization, and Defendant has established that Plaintiff did not pay for this work, Defendant is entitled to summary judgment on this counterclaim.

## VII. Eavesdropping Under Illinois Law

▮ Defendant moves for summary judgment on its counterclaim that Plaintiff and Rucker are liable for violating the Illinois eavesdropping statute. Plaintiff and Rucker respond that this claim is governed by New York—and not Illinois—law, and even if the Illinois eavesdropping statute does apply, their conduct did not violate the statute.[5]

software development. (Greenblatt Decl. Exs. 3, 4; Rucker Decl. ¶ 10; Tung Decl. Ex. 2 at SKY000630.) None of this evidence, however, bears any relevance to the work performed on the three invoices in question.

**5.** Plaintiff and Rucker also filed a cross-motion for summary judgment, asserting that their conduct does *not* violate this statute. In violation of the Court's Individual Practices, Plaintiff and Rucker did not submit a pre-

■ New York permits conversations to be recorded with the consent of only one party. N.Y. Penal Law § 250.00; *People v. Lasher*, 58 N.Y.2d 962, 963, 460 N.Y.S.2d 522, 447 N.E.2d 70 (1983). By contrast, Illinois law provides that:

(a) A person commits eavesdropping when he:

(1) Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication or (B) in accordance with Article 108A or Article 108B of the "Code of Criminal Procedure of 1963". . . .

Ill.Rev.Stat. ch. 38 § 14–2. Put simply, the Illinois eavesdropping statute currently in effect prohibits the recording of conversations without the consent of all parties. The statute calls for civil and criminal liability for violators and provides for civil remedies to parties who are injured by such eavesdropping. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A corporation may pursue a claim for unlawful eavesdropping pursuant to the statute. *See, e.g., Int'l Profit Assocs., Inc. v. Paisola*, 461 F.Supp.2d 672, 677–78 (N.D.Ill.2006).

Before the current version of this statute took effect in 1994, the Illinois Supreme Court had held that a party to a conversation could record that conversation without running afoul of this statute. *See People v. Beardsley*, 115 Ill.2d 47, 104 Ill.Dec. 789, 503 N.E.2d 346, 349–50 (1986).

However, courts have recognized that the statute was amended in response to *Beardsley* to prohibit the recording of conversations without the consent of all parties. *Carothers v. Starbucks Coffee Co.*, No. 96 Civ. 3849(PEP), 1998 WL 325262, at *7 (N.D. Ill. June 11, 1998) (citing *People v. Siwek*, 284 Ill.App.3d 7, 219 Ill.Dec. 444, 671 N.E.2d 358, 362–63 (1996)). Thus, Plaintiffs repeated reliance on *Beardsley* and other decisions that predate the 1994 amendment to the statute is misplaced. (Opp'n 16.)

Because there is no dispute that Silverstein did not consent to having his conversations with Rucker recorded (Def. 56.1 ¶¶ 59–63), the recordings violated Illinois law but not New York law. Accordingly, there is a direct conflict between New York and Illinois law, and the Court must conduct a choice of law analysis.

■ New York uses an "interest analysis" approach to choice of law, which seeks "to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir.2012) (citation and internal quotation marks omitted); *accord Babcock v. Jackson*, 12 N.Y.2d 473, 477, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). "In the context of tort law, interest analysis distinguishes between conduct-regulating rules, which dictate appropriate standards of conduct, and loss-allocating rules, which prohibit, assign, or limit liability after the tort oc-

motion letter in advance of making this motion, and they failed to submit a 56.1 Statement in support of this motion, which is a violation of Local Civil Rule 56.1(a), These reasons alone are sufficient grounds for denying the cross motion. *E.g., MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*, 435 F.Supp.2d

285, 304–05 (S.D.N.Y.2006) (denying defendant's motion for summary judgment for failure to submit a Rule 56.1 statement). Accordingly, as stated on the record during the October 9, 2012 Oral Argument, Plaintiff and Rucker's cross-motion is denied.

curs." *Fed. Housing Fin. Agency v. UBS Americas, Inc.*, 858 F.Supp.2d 306, 335 (S.D.N.Y.2012) (citation and internal quotation marks omitted). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir.2006) (citation and internal quotation marks omitted). However, "[e]ven where a law is conduct-regulating, we do not blindly follow the *lex loci* rule." *Amusement Indus., Inc. v. Stern*, 693 F.Supp.2d 301, 313 (S.D.N.Y.2010) (citation and internal quotation marks omitted).

■■■ Based on the particular facts of this case, the Court is persuaded that Illinois law governs Defendant's counterclaim. First, Rucker recorded the calls with Silverstein knowing that Silverstein was physically present in Illinois. (Def. 56.1 ¶ 63.) In this regard, Rucker knowingly reached into Illinois and committed a tort against an individual and corporate entity in Illinois. *Cf., e.g., Hunter v. Derby Foods*, 110 F.2d 970, 972 (2d Cir.1940) (applying Ohio law to suit against defendant food manufacturer that reached out and shipped the product that caused the plaintiffs injury to Ohio). Second, the injury caused by the recordings was inflicted in Illinois, where Defendant is located. *See Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F.Supp.2d 247, 256 (S.D.N.Y.2011); *Locke v. Aston*, 31 A.D.3d 33, 814 N.Y.S.2d 38, 42 (2006). Indeed, a court in Illinois has held that an individual in New York was liable for violating the Illinois eavesdropping statute by recording conversations without the consent of all parties even though the conversation was recorded in New York. *Anderson v. Hale*, 202 F.R.D. 548, 558–59 (N.D.Ill.2001).

Whether New York courts will always apply the law of states—such as Illinois—that take a more restrictive approach to the recording of telephone conversations is an issue of state law that may ultimately need to be resolved by the New York Court of Appeals. In an era of global cellular phone access and number portability, it is certainly conceivable that New York courts will endeavor to protect their citizens from liability in foreign jurisdictions and eschew the *lex loci* rule, particularly where it is difficult for a caller to know with certainty where a party to the call is located. However, because Rucker knew that he was recording a telephone conversation with a party in Illinois, and the injury was sustained in Illinois, the Court is persuaded that, as compared to New York, Illinois has the greater "interest in regulating behavior within its borders," *GlobalNet Financial.Com.*, 449 F.3d at 384, at least with respect to the specific conduct at issue in this case.

Once the choice of law issue is resolved in favor of Illinois, there can be no dispute that Silverstein did not consent to having his calls with Rucker recorded. (Def. 56.1 ¶¶ 59–63.) As a result, Defendant is entitled to summary judgment on its counterclaim against Rucker and Plaintiff pursuant to the Illinois eavesdropping statute.

Nevertheless, although Defendant is entitled to summary judgment with respect to liability on its counterclaim, Defendant has offered nothing to establish how it was damaged by the recordings. Accordingly, the parties are directed to make additional submissions as to what damages, if any, are appropriate.

## VIII. CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion for summary judgment and denies Plaintiff and Rucker's cross-motion for summary judgment.

**540**

IT IS HEREBY ORDERED THAT the parties shall submit a joint letter on or before January 4, 2013 setting forth their views as to what damages, if any, are appropriate with respect to Defendant's counterclaim pursuant to the Illinois eavesdropping law.

The Clerk of Court is respectfully requested to terminate the motions pending at Doc. Nos. 45 and 51.

SO ORDERED.